OPINION OF THE COURT
Hurlbtjtt, J.E
This appeal presents two primary substantive issues for our consideration. First, we must determine whether Tax Law § 471-e (as amended by L 2005, ch 61, part K, §§ 2, 7; ch 63, part A, § 4) provides the exclusive means by which to tax cigarette sales on an Indian reservation to non-Indians or to Indians who are not members of that nation or tribe where the reservation is located (hereafter, non-member Indians), or whether Tax Law § 471 provides an independent basis for imposing a tax on such sales. Second, we must determine whether plaintiffs two convenience stores are located within a “ £[q]ualified reservation’ ” as that term is defined in Tax Law § 470 (16) (a) (as added by L 2005, ch 61, part K, § 1). We agree with plaintiff with respect to both issues, i.e., that section 471-e is the exclusive means for taxing such cigarette sales and that plaintiffs two stores are located within a qualified reservation. We therefore conclude that the judgment of Supreme Court (Cayuga Indian Nation of N.Y. v Gould, 21 Misc 3d 1142[A], 2008 NY Slip Op 52478[U]) should be reversed.
Factual Background
In 2003 plaintiff purchased property on the open market in Union Springs, Cayuga County and in Seneca Falls, Seneca County and has been operating a convenience store on the property in each county. It is undisputed that plaintiff sells from both stores unstamped cigarettes, upon which New York State sales taxes have not been paid, to both its Indian and non-Indian customers {see Tax Law § 471 [1]; § 471-e [1] [a]).
In May 2008 this Court determined in Day Wholesale, Inc. v State of New York (51 AD3d 383 [2008]) that the amended version of Tax Law § 471-e was not “in effect” based on the failure of the Department of Taxation and Finance (Department) to take action to implement that statute by issuing necessary coupons. We wrote in Day Wholesale that section 471-e, entitled *103 “Taxes imposed on qualified reservations,” “embodie[d] the Legislature’s most recent effort to collect taxes oh cigarettes sold on Indian reservations” (id. at 384). Thereafter, law enforcement officials in Cayuga and Seneca Counties determined that plaintiff was selling unstamped cigarettes from non-reservation lands in violation of Tax Law § 471 and former § 1814. On November 25, 2008, a detective from the Cayuga County Sheriff’s Office and an investigator from the Seneca County District Attorney’s Office obtained search warrants in Supreme Court in each county and, pursuant thereto, law enforcement officials seized various items of property, including large quantities of unstamped cigarettes, from both stores.
Procedural History
On November 26, 2008, plaintiff commenced this action seeking, inter alia, the return of the property seized during the execution of the two search warrants and a declaration that plaintiff was not violating Tax Law §§ 471, 471-e, 473 or former § 1814 by selling unstamped cigarettes. The first cause of action seeks a declaration that, “because [section] 471-e is not in effect, [p]laintiff is under no obligation to pay or collect taxes on the cigarettes [it] sell[s].” The second cause of action alleges that, because Tax Law § 471-e is not in effect, the search warrants and subsequent seizure of property were illegal. The third cause of action seeks the return of a computer on the ground that it was outside the scope of the applicable search warrant. The fourth cause of action seeks, inter alia, a preliminary injunction enjoining defendants “from alleging that [p]laintiff and/or its employees have violated . . . Tax Law §§ 471, 471-e, 473, or [former §] 1814.”
On the same day that plaintiff commenced this action, plaintiff also moved by order to show cause for relief similar to that requested in the complaint. The Cayuga County Sheriff and the Seneca County Sheriff (defendants) cross-moved to dismiss the complaint against them on several grounds. In the alternative, defendants sought to convert their cross motion to one for summary judgment dismissing the complaint against them. Upon notice to the parties, Supreme Court, Monroe County, converted plaintiffs motion to one seeking summary judgment, and also converted defendants’ cross motion to one for summary judgment. Although the court rejected defendants’ contention that declaratory relief was not a remedy available to plaintiff, the court denied plaintiffs motion. The court granted *104 judgment declaring, inter alia, that Tax Law § 471-e did not “exclusively govern the imposition of sales and excise taxes on cigarettes” sold from the two stores and determined that the two stores in question are not located on qualified reservations (Cayuga Indian Nation of N.Y., 2008 NY Slip Op 52478[U] at *17). The court also “declar[ed]” that this Court’s decision in Day Wholesale did not invalidate prosecutions under section 471 and former section 1814 (id.). Although we agree with the court that plaintiff properly sought declaratory relief, we disagree with the court’s remaining conclusions. Instead, we conclude that section 471-e is the exclusive statute governing the imposition of sales and excise taxes on cigarettes sold on reservations. We further conclude that both stores are located within a qualified reservation, as that term is defined in section 470 (16) (a).
Availability of Declaratory Relief
As a preliminary matter, we note that defendants and amicus District Attorneys Association of New York State contend that a declaratory judgment action cannot be maintained by a party against whom a criminal proceeding is pending, relying primarily on Kelly’s Rental v City of New York (44 NY2d 700 [1978]) and Matter of Morgenthau v Erlbaum (59 NY2d 143 [1983], cert denied 464 US 993 [1983]). We reject that contention. Although courts of equity “will not ordinarily intervene to enjoin the enforcement of the law by prosecuting officials” (Reed v Littleton, 275 NY 150, 153 [1937]), a declaratory judgment action is available “in cases where a constitutional question is involved or the legality or meaning of a statute is in question and no question of fact is involved” (Dun & Bradstreet, Inc. v City of New York, 276 NY 198, 206 [1937]; see Cooper v Town of Islip, 56 AD3d 511, 512 [2008]; Ulster Home Care v Vacco, 255 AD2d 73, 76-77 [1999]).
In this case, plaintiff commenced the action the day after the search warrants were executed but before a “criminal action” was commenced against it by the filing of an accusatory instrument (CPL 1.20 [17]). Plaintiff sought a declaration concerning its criminal liability pursuant to Tax Law §§ 471, 471-e, 473 and former § 1814, and no factual issues are in dispute. The reliance by defendants and amicus on Kelly’s Rental for the proposition that a party cannot bring a declaratory judgment if a “[c]riminal proceeding” (CPL 1.20 [18]) is pending against that party is misplaced. Although in Kelly’s *105 Rental the Court of Appeals uses the term “criminal proceeding” instead of “criminal action,” a criminal action had been commenced in that case when the declaratory judgment action was brought (44 NY2d at 702; see Matter of Beneke v Town of Santa Clara, 9 AD3d 820, 820-821 [2004]). Thus, under the facts of Kelly’s Rental, plaintiff was not precluded from bringing this action inasmuch as a criminal action against it had not yet been commenced.
The reliance by defendants and amicus on Morgenthau for the proposition that only the People may commence a declaratory judgment action in this context is also misplaced (see 59 NY2d at 152). In that case, the Court of Appeals stated that only the People could challenge an interlocutory ruling of a criminal court in the defendant’s favor, noting that a defendant “always has available a right to appeal” (id.). The declaratory judgment action in Morgenthau, however, was commenced during the pendency of a criminal action, rather than prior to its commencement (see id. at 146). Thus, we conclude that the court properly determined that it could entertain this action insofar as it involved the “application of certain statutes to plaintiffs undisputed conduct” and not “collateral review of the validity of the search warrants or the manner of [their] execution” (Cayuga Indian Nation of N.Y., 2008 NY Slip Op 52478[U] at *4; see generally New York Foreign Trade Zone Operators, Inc. v State Liq. Auth., 285 NY 272, 276-278 [1941]; Dun & Bradstreet, 276 NY at 206; Bunis v Conway, 17 AD2d 207, 208-209 [1962], lv dismissed 12 NY2d 645, 882 [1963]).
Legislative and Executive History
Section 471 (1) of the Tax Law provides in relevant part that “[t]here is hereby imposed and shall be paid a tax on all cigarettes possessed in the state by any person for sale, except that no tax shall be imposed on cigarettes sold under such circumstances that this state is without power to impose such tax . ...” It is well settled that a state is without power to tax cigarettes to be consumed on reservations by tribal members but has the power to tax on-reservation sales to non-Indians and non-member Indians (see generally Oklahoma Tax Comm’n v Citizen Band of Potawatomi Tribe of Okla., 498 US 505, 512-513 [1991]; Washington v Confederated Tribes of Colville Reservation, 447 US 134, 151, 160-161 [1980], reh denied 448 US 911 [1980]; Moe v Confederated Salish & Kootenai Tribes of Flathead Reservation, 425 US 463, 481-483 [1976]).
*106 Prior to 2003, this State’s attempts to collect the tax on cigarette sales to non-Indians were based solely on regulations promulgated by the Department (see e.g. 20 NYCRR former 336.6, 336.7). 20 NYCRR former 336.6 (b) (3) defined qualified reservation as “the following reservations of the exempt Indian nations or tribes: Allegany Indian reservation, Cattaraugus Indian reservation, Oil Spring Indian reservation, Oneida Indian territory, Onondaga Indian reservation, Poospatuck Indian reservation, St. Regis Mohawk (Akwesasne) Indian reservation, Shinnecock Indian reservation, Tonawanda Indian reservation and Tuscarora Indian reservation.” Under that definition, plaintiffs stores are not located on property that constituted a qualified reservation. Effective April 29, 1998, however, those regulations were repealed, based in part on enforcement difficulties faced by the Department (see NY Reg, Apr. 29, 1998, at 22-24), and the Department adopted a policy of forbearance, pursuant to which it suspended all attempts to collect the tax on reservation sales of cigarettes (see generally Matter of New York Assn. of Convenience Stores v Urbach, 92 NY2d 204, 213-215 [1998]).
Soon after the repeal of the aforementioned regulations, litigation initiated by non-Indian convenience store owners resulted in the determination that the Department had a rational basis for refusing to enforce the regulations and could not be compelled to do so (see Matter of New York Assn. of Convenience Stores v Urbach, 275 AD2d 520, 522-523 [2000], appeal dismissed 95 NY2d 931 [2000], lv denied 96 NY2d 717 [2001], cert denied 534 US 1056 [2001]). Thereafter, in June 2001, the United States District Court for the Northern District of New York held in Oneida Indian Nation of N.Y. v City of Sherrill, N.Y. (145 F Supp 2d 226 [2001]) that various properties that had been acquired by the Oneida Indian Nation of New York (OIN) on the open market were not taxable by the City of Sherrill and the counties in which they were located based on the doctrine of sovereign immunity (see id. at 253-254). Although the District Court’s judgment was affirmed by the Second Circuit Court of Appeals and ultimately reversed by the United States Supreme Court (id., affd 337 F3d 139 [2003], revd 544 US 197 [2005], reh denied 544 US 1057 [2005]), we note that the District Court found “no evidence of any congressional act that disestablished the [OIN] Reservation” between the 1794 Treaty of Canandaigua, which confirmed and guaranteed the Reservation, and the present day (id. at 254). On May 15, 2003, *107 while the appeal from the District Court’s judgment was pending before the Second Circuit, the Legislature overrode the Governor’s veto to pass chapter 62 of the Laws of 2003. Chapter 62, part T3, § 4 (as amended by L 2003, ch 63, part Z, § 4) created Tax Law former § 471-e, entitled “Taxes imposed on native American nation or tribe lands,” which provided that the Department was directed to “promulgate rules and regulations necessary to implement the collection of sales, excise and use taxes on . . . cigarettes” where a non-Native American purchases such cigarettes “on or originating from native American nation or tribe land” (former § 471-e).
As noted, the Second Circuit thereafter affirmed the District Court’s judgment in the OIN’s favor, holding that the OIN’s aboriginal reservation was not disestablished by the 1838 Treaty of Buffalo Creek and that, because the OIN’s properties in the City of Sherrill that were purchased on the open market “are located within that reservation, . . . Sherrill can neither tax the land nor evict the [OIN]” (Oneida Indian Nation of N.Y., 337 F3d at 167). Two months later, in September 2003, the Department proposed regulations in response to Tax Law former § 471-e (see NY Reg, Sept. 24, 2003, at 18-21). To the extent relevant here, those proposed regulations defined qualified reservation as it is currently defined in section 470 (16) (see proposal of Indian tax enforcement provisions, http://www.tax.state.ny.us/ pdf/rulemaking/sepl003/indianenf/text.pdf [NY St Dept of Tax & Fin, Sept. 10, 2003, at 5-6]).
On April 23, 2004, the District Court determined that plaintiff’s original reservation of approximately 64,000 acres had not been disestablished and that plaintiff was not subject to local zoning regulation (see Cayuga Indian Nation of N.Y. v Village of Union Springs, 317 F Supp 2d 128, 143, 151 [2004]).
In June 2004, the Legislature passed a bill that essentially tracked the language of the Department’s proposed regulations, including the definition of qualified reservation and the current language of Tax Law § 471-e (see 2004 NY Senate Bill S6822-B). The bill’s Senate sponsor noted that, despite the passage of former section 471-e in 2003, the Department had refused to implement a system to collect “non-Indian taxes” (Sponsor’s Mem, Veto Jacket, 2004 NY Senate Bill S6822-B). The legislation was vetoed by the Governor (see Governor’s Veto Message No. 265, Veto Jacket, 2004 NY Senate Bill S6822-B).
On March 27, 2005, the same proposed legislation, with minor amendments, came to the floor of the Senate and Assembly. On *108 March 29, 2005, the United States Supreme Court issued its decision in Oneida Indian Nation of N.Y., reversing the Second Circuit by holding that the OIN could not reassert sovereignty over lands that had been allocated to it in the 1794 Treaty of Canandaigua but that had been free of Indian ownership or control for 200 years (see 544 US at 202-203). Two days later, on March 31, 2005, the Legislature passed chapter 61 of the Laws of 2005, amending, inter alia, Tax Law §§ 470 and 471-e. The Governor signed the bill into law on April 12, 2005 (see L 2005, ch 61).
On March 16, 2006, 15 days after coupons necessary to allow member Indians to purchase tax-free cigarettes were to be issued by the Department (see generally L 2005, ch 63, part A, § 4), the Department issued an advisory opinion stating that it was adhering to its policy of forbearance (see NY St Dept of Tax & Fin Advisory Op No. TSB-A-06[2]M, available at http:// www.tax.state.ny.us/pdf/advisory_opinions/misc/a06_2m.pdf). On May 2, 2008, this Court issued its decision in Day Wholesale holding that Tax Law § 471-e was not in effect because the Department had not issued the necessary coupons (see 51 AD3d at 388-389).
Discussion
I. Section 471-e
Our first task is to discern the intent of the Legislature in its enactment of chapter 61 of the Laws of 2005. As amended by that chapter, Tax Law § 471-e (1) (a) provides that
‘ ‘ [n] otwithstanding any provision of this article to the contrary . . . Indians may purchase cigarettes for [their] own use or consumption exempt from cigarette tax on their nations’ or tribes’ qualified reservations. However, . . . Indians purchasing cigarettes off their reservations or on another nation’s or tribe’s reservation, and non-Indians making cigarette purchases on an Indian reservation shall not be exempt from paying the cigarette tax when purchasing cigarettes within this state. Accordingly, all cigarettes sold on an Indian reservation to non-members of the nation or tribe or to non-Indians shall be taxed, and evidence of such tax will be by means of an affixed cigarette tax stamp.”
In resolving the parties’ dispute concerning the meaning of Tax Law § 471-e, we are mindful that our function “is to *109 ascertain and give effect to the intention of the Legislature” (McKinney’s Cons Laws of NY, Book 1, Statutes § 92 [a]), and that “statutory text is the clearest indicator of legislative intent” (Matter of DaimlerChrysler Corp. v Spitzer, 7 NY3d 653, 660 [2006]). Nevertheless, “ ‘inquiry must be made of the spirit and purpose of the legislation, which requires examination of the statutory context of the provision as well as its legislative history’ ” (Mowczan v Bacon, 92 NY2d 281, 285 [1998], quoting Matter of Sutka v Conners, 73 NY2d 395, 403 [1989]; see Consedine v Portville Cent. School Dist., 12 NY3d 286, 290-291 [2009]).
The Legislature’s express imposition of the cigarette tax in Tax Law § 471-e and adoption of the language of the proposed regulations of the Department demonstrate the intention of the Legislature to overhaul the statutory scheme and, in our view, to provide a single statutory basis for taxing cigarette sales on qualified reservations. Historically, the State of New York has not attempted to impose taxes on reservation cigarette sales unless a specific regulatory or statutory scheme was in place to differentiate between sales to Indians and sales to non-Indians or non-member Indians. Without such a scheme in place, it logically follows that no taxes may be collected or owed to the State by plaintiff. Moreover, the Legislature acted after the courts had determined that the Department had a rational basis for refusing to enforce the regulations (see New York Assn. of Convenience Stores, 275 AD2d at 522-523), and thus in 2005 the Legislature was aware that, although the Department was directed to promulgate regulations by former section 471-e, the Department was not required to enforce those regulations. The Legislature therefore recognized the need to have a separate statutory scheme in place, aside from the general taxing provision of Tax Law § 471, in order to impose a cigarette tax on reservation sales to non-Indians and non-member Indians, while at the same time acknowledging that it was “without power” to tax reservation sales to qualified Indians (§ 471 [1]).
As this Court noted in Day Wholesale,
“there is no question that the Legislature intended to create a procedure that would permit the State to collect cigarette taxes on reservation sales to non-Indians and non-members of the nation or tribe while simultaneously exempting from such tax reservation sales to qualified Indian purchasers. Because both aspects of the procedure must func *110 tion simultaneously, the Legislature provided for a system utilizing Indian tax exemption coupons to distinguish taxable sales from tax-exempt sales. Without the coupon system in place, cigarette wholesale dealers and reservation cigarette sellers have no means by which to verify sales to tax-exempt purchasers” (51 AD3d at 387 [emphasis added]).
Given the recognition of the Legislature that the sovereignty considerations attendant upon imposing and collecting a state cigarette tax on reservation sales render Tax Law § 471 alone insufficient to impose the tax and its express imposition of the tax in section 471-e, as well as our decision in Day Wholesale that section 471-e is not in effect, we are compelled to conclude that there is no statutory basis for the imposition of a cigarette tax on a qualified reservation as that term is defined in section 470 (16) (a). Thus, possession or sales of untaxed cigarettes on qualified reservations cannot subject the seller or possessor to criminal prosecution.
II. Qualified Reservation
Of course, if the convenience stores in question were not situated on a qualified reservation, as defendants contend, then Tax Law § 471-e would be inapplicable, and the stores would be fully subject to taxation under section 471 and, more to the point, to criminal prosecution under former section 1814. We conclude, however, that the Legislature intended to include the subject properties within the definition of a qualified reservation. Tax Law § 470 (16) provides a four-part definition of the term qualified reservation. We note that of relevance in this case is the fact that paragraph (a) defines a qualified reservation as £<[l]ands held by an Indian nation or tribe that is located within the reservation of that nation or tribe in the state.” In 2003, when the Department drafted the proposed regulations that were then adopted by the Legislature, federal common law provided that Indian nations or tribes could purchase land on the open market and regain sovereignty over that land provided that the land was within that nation’s or tribe’s original reservation (see generally Oneida Indian Nation of N.Y., 337 F3d at 155-157). It is in this context that the definition of qualified reservation was proposed by the Department and subsequently adopted by the Legislature. We conclude that the Legislature intended that the definition of qualified reservation reflect the existing federal common law at the time that the legislation was *111 passed. Thus, under the plain language of the statute and consistent with legislative intent, the two properties in question in this case qualify as “[Hands held by an Indian nation or tribe” as contemplated by the statute (Tax Law § 470 [16] [a]).
We acknowledge that the language of Tax Law § 470 (16) (a) does not take into consideration the Supreme Court’s determination in Oneida Indian Nation of NY. that Indian nations cannot regain sovereignty over such lands (see 544 US at 202-203). Nevertheless, that case was decided well after the definition of qualified reservation was crafted by the Department, and only two days prior to the enactment of section 470 (16) adopting that definition. Moreover, it is apparent that the Legislature intended to include within the definition of qualified reservation properties such as those in question in this case. Paragraph (b) of section 470 (16) expressly includes a concept of sovereignty in the definition of qualified reservation as “[Hands . . . over which an Indian nation or tribe exercises governmental power.” In contrast, paragraph (a) contains no mention of sovereignty. We thus agree with plaintiff that the clear legislative intent was to omit any consideration of sovereignty under paragraph (a).
As the legislative and executive history preceding the enactment of chapter 61 of the Laws of 2005 noted above makes clear, the Legislature intended the definition of qualified reservation to comport with the holdings of the District Court and Second Circuit Court of Appeals in Oneida Indian Nation of NY. that there has been no disestablishment of the reservation lands ceded to the OIN (and to plaintiff) by the Treaty of Canandaigua (see 337 F3d at 161-165; 145 F Supp 2d at 254). The Supreme Court found it unnecessary to address that issue when it reversed the Second Circuit in Oneida Indian Nation of N.Y. (see 544 US at 215 n 9). We are thus persuaded that, based on the current state of the federal common law, plaintiff’s reservation has not been disestablished and thus constitutes a qualified reservation pursuant to the plain language of Tax Law § 470 (16) (a). We therefore conclude that the two stores at issue in this case, which are located on plaintiffs original reservation, are located on a qualified reservation.
Conclusion
In sum, the legislative purpose, context and history of Tax Law § 471-e lead to the conclusion that it exclusively governs the imposition of sales and excise taxes on cigarettes sold on a qualified reservation as that term is defined in section 470 (16) *112 (a). Further, both of plaintiffs stores are located within a qualified reservation as that term is defined in section 470 (16) (a).
Accordingly, we conclude that the judgment should be reversed, plaintiffs motion granted in part, judgment granted in favor of plaintiff declaring that section 471-e exclusively governs the imposition of sales and excise taxes on cigarettes sold on a qualified reservation as that term is defined in section 470 (16) (a) and that plaintiffs two stores in question are located within a qualified reservation as that term is defined in section 470 (16) (a), defendants’ cross motion denied and the declarations vacated.