09-3942-cv (L); 09-3997-cv (CON)
The City of New York v. Golden Feather Smoke Shop, Inc.

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2009

(Argued: January 14, 2010          Decided: March 4, 2010)

Docket Nos. 09-3942-cv (L); 09-3997-cv (CON)

THE CITY OF NEW YORK,

   *Plaintiff-Appellee*,

   v.

GOLDEN FEATHER SMOKE SHOP, INC., KIMO SMOKE SHOP, INC., SMOKE AND ROLLS, INC.,
SHAWN MORRISON, KIANA MORRISON, IN HER INDIVIDUAL CAPACITY, JESSEY WATKINS, TONY D.
PHILLIPS,

   *Defendants*,

MONIQUE'S SMOKE SHOP, ERNESTINE WATKINS, IN HER INDIVIDUAL CAPACITY, WAYNE HARRIS,
RED DOT & FEATHERS SMOKE SHOP, INC., RAYMOND HART, IN HIS INDIVIDUAL CAPACITY,
SMOKING ARROW SMOKE SHOP, DENISE PASCHALL, IN HER INDIVIDUAL CAPACITY, TDM
DISCOUNT CIGARETTES, THOMASINA MACK, IN HER INDIVIDUAL CAPACITY, PEACE PIPE SMOKE
SHOP, RODNEY MORRISON, CHARLOTTE MORRISON, IN HER INDIVIDUAL CAPACITY,

   *Defendants-Appellants*.

Before: HALL and LIVINGSTON, *Circuit Judges*, and CHIN, *District Judge*.[*]

   Defendants-appellants Monique's Smoke Shop *et al.* appeal from the August 25, 2009

grant of a preliminary injunction to the City of New York (the "City") by the United States

---

   [*] The Honorable Denny Chin, United States District Judge for the Southern District of
New York, sitting by designation.

District Court for the Eastern District of New York (Amon, *J.*), enjoining the sale of untaxed cigarettes other than to members of the Unkechauge Nation for their personal use. The district court determined first that the City was not required to show irreparable harm; the court further ruled that even if the City were required to make such a showing, it had carried its burden of establishing both harm and a likelihood of success on the merits with respect to its claims under the Contraband Cigarette Trafficking Act, 18 U.S.C. § 2341 *et seq.*, and under the Cigarette Marketing Standards Act, N.Y. Tax Law § 483 *et seq.* Before we can decide whether the preliminary injunction may stand, we must decide the applicability and scope of §§ 471 and 471-e of the New York Tax Code. Accordingly, as suggested by a number of the appellants, we respectfully certify two questions to the New York Court of Appeals for its consideration:

> (1) Does N.Y. Tax Law § 471-e, either by itself or in combination with the provisions of § 471, impose a tax on cigarettes sold on Native American reservations when some or all of those cigarettes may be sold to persons other than members of the reservation's nation or tribe?
>
> (2) If the answer to Question 1 is "no," does N.Y. Tax Law § 471 alone impose a tax on cigarettes sold on Native American reservations when some or all of those cigarettes may be sold to persons other than members of the reservation's nation or tribe?

JAMES M. WICKS, Farrell Fritz, P.C., Uniondale, New York (George C. Pratt, Hillary A. Frommer, Farrell Fritz P.C., James F. Simermeyer, Law Offices of James F. Simermeyer, P.C., *on the brief*), *for Defendants-Appellants Monique's Smoke Shop, Inc., Ernestine Watkins, Wayne Harris, Red Dot & Feather Smoke Shop, Inc., Raymond Hart, Smoking Arrow Smoke Shop, Denise Paschall, TDM Discount Cigarettes, and Thomasina Mack.*

DANIEL NOBLE, Law Office of Daniel Noble, New York, New York, *for Defendants-Appellants Peace*

*Pipe Smoke Shop, Rodney Morrison and Charolette Morrison s/h/a Charlotte Morrison.*

RICHARD LEVITT, Levitt & Kaizer, New York, New York, *for Defendant-Appellant Wayne Harris.*

VICTORIA SCALZO, New York, New York (Stephen J. McGrath and Eric Proshansky, *on the brief*), for Michael A. Cardozo, Corporation Counsel of the City of New York, *for Plaintiff-Appellee.*

HALL, *Circuit Judge*:

Defendants-appellants appeal the order of the Eastern District of New York (Amon, *J.*), preliminarily enjoining the sale of untaxed cigarettes to anyone not a member of the Unkechauge Nation. We consider here whether the City of New York (the "City") has demonstrated that it is entitled to a preliminary injunction. In order to effectuate our analysis, for the reasons that follow, we certify to the New York Court of Appeals two questions regarding the effect of §§ 471 and 471-e of the New York Tax Code on cigarette sales on Native American reservation land.

## BACKGROUND

The Unkechauge Indian Nation has existed in New York State for hundreds of years. Its current lands lie in Mastic, Long Island, on the Poospatuck Reservation. The population and territorial reach of the Unkechauge has diminished over the years, but the Unkechauge still maintain a sovereign-to-sovereign relationship with New York State. Appellants are businesses and proprietors that sell cigarettes on the Poospatuck Reservation to members of the Unkechauge Nation and the general public alike.

On September 29, 2008, the City filed a complaint against the above-named defendants and defendants-appellants, seeking injunctive relief, penalties, and damages under the

3

Contraband Cigarette Trafficking Act, 18 U.S.C. § 2341 *et seq.*, (the "CCTA")[1] and the Cigarette Marketing Standards Act, N.Y. Tax Law § 483 *et seq.* (the "CMSA").[2] The City filed its complaint in federal court, asserting that federal jurisdiction lies under 28 U.S.C. § 1331 for the CCTA claim and supplemental jurisdiction lies under 28 U.S.C. § 1367(a) for the CMSA claim. The district court, as provided for in § 1367(a), accepted the claims asserting both the federal and the state law violations.

The complaint alleges that the reservation vendors sell untaxed cigarettes in bulk to "bootleggers" who then resell them in the City, causing a significant loss of tax revenue to both the City and New York State. In October 2008 the City moved for a preliminary injunction, arguing irreparable harm in lost tax revenues should the vendors continue their sales practice. Defendants Monique's Smoke Shop, Ernestine Watkins, Wayne Harris, Red Dot & Feather Smoke Shop, Inc., Raymond Hart, Smoking Arrow Smoke Shop, Denise Paschall, TDM Discount Cigarettes, Thomasina Mack, Kimo Smoke Shop, Golden Feather Smoke Shop, Smoke and Rolls, and Kiana Morrision (the "Moving Defendants") filed a motion to dismiss the City's claims under Federal Rule of Civil Procedure 12(b)(1) for a lack of subject matter jurisdiction on the grounds of Tribal sovereign immunity. The district court denied this motion on March 16, 2009, concluding that the entities are private businesses rather than arms of the Tribe.

---

[1] The CCTA makes it illegal "for any person knowingly to ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes," defined as "a quantity in excess of 10,000 cigarettes, which bear no evidence of the payment of applicable State or local cigarette taxes." 18 U.S.C. §§ 2341-46.

[2] Under the CMSA, it is unlawful "[f]or any agent, wholesale dealer or retail dealer . . . to advertise, offer to sell, or sell cigarettes at less than cost." N.Y. Tax Law § 484(a). The "basic cost of cigarettes" is defined as "the invoice cost of cigarettes to the agent who purchases from the manufacturer . . . less all trade discounts . . . to which shall be added the full face value of any stamps which may be required by law." N.Y. Tax Law § 483.

The Golden Feather Smoke Shop, Inc., Kimo Smoke Shop, Inc., Shawn Morrison, and Kiana Morrison entered into a consent injunction on May 14, 2009 and are not part of this appeal. Smoke and Rolls no longer operates as a business. Both Tony D. Phillips and Jessey Watkins currently have a motion for default judgment pending against them in the district court; they also are not part of this appeal. The remaining Moving Defendants filed a motion for reconsideration of their motion to dismiss. On August 25, 2009, the district court denied the motion for reconsideration and granted the City a preliminary injunction. This Court held a hearing on an emergency motion to lift the preliminary injunction and issued its order denying that request. We also asked the parties to brief whether to certify questions to the New York Court of Appeals on the applicability of New York Tax Law §§ 471 and 471-e to cigarette sales by reservation vendors.

**Factual Findings**

In its August 25, 2009 decision the district court made numerous factual findings regarding the actions of the various defendant smoke shops and proprietors. These findings were based upon testimony of cigarette bootleggers who did business with the shops as well as testimony of investigators from the Department of Taxation and Finance (the "DTF"). *See City of New York v. Golden Feather Smoke Shop, Inc.*, 2009 WL 2612345, at *7-8, *10 (E.D.N.Y. Aug. 25, 2009). The facts are essentially unchallenged at this stage.

Monique's Smoke Shop, Peace Pipe Smoke Shop, Red Dot and Feather Smoke Shop, Smoking Arrow Smoke Shop, and TDM Discount Cigarettes, along with the proprietors of the shops, were found to have participated in bulk sales of unstamped cigarettes, often selling hundreds of cartons of unstamped cigarettes at a time, in blatant violation of the CCTA. The

5

district court also found that these sales were likely to continue based on the high-volume sales practices of each of the defendant businesses.

The court calculated the minimum price for which a retail dealer in New York State could sell a carton of Newport and Marlboro brand cigarettes in the years 2006 to 2009 based on the minimum price requirements of the CMSA, which includes the required State and local taxes. Considering the testimony of the proprietors and informants, the court found that because the smoke shops were regularly selling unstamped cartons, they were selling them for less than the minimum prices set by the CMSA throughout the years identified by the complaint. Based on their past practices, the court also found that the vendors were likely to continue selling these violative quantities of unstamped cigarettes in the future.

In addition to making findings about the defendants-appellants' business operations, the court found that these operations caused injury to the City because "large quantities of untaxed cigarettes are purchased in defendants' stores and trafficked into the City where they are resold at below-market prices, without the payment of City or State taxes." *Golden Feather Smoke Shop, Inc.*, 2009 WL 2612345, at *22. The district court based this finding on the evidence from the bootleggers, DTF investigators, and arrest reports from Suffolk County documenting "that numerous individuals arrested in Suffolk County for transporting or possessing unstamped cigarettes have New York City addresses." *Id.* This "substantial trade in unstamped cigarettes between the Poospatuck Reservation and New York City" caused injury to the City in the loss of "significant tax revenue." *Id.* at *23. The court also found concomitant effects on the public health "due to the relationship between cigarette price and smoking behavior." *Id.*

6

Two expert witnesses testified about the harm to the City from the availability of unstamped, cheap cigarettes. The then-Commissioner of the City's Department of Health and Mental Hygiene, Dr. Thomas Frieden, testified that cigarette use has a price elasticity of -0.4, meaning "that for every 10% increase in the price of cigarettes, there is a 4% decline in smoking." *Id.* Dr. Frieden attributed half the decline to smokers quitting, while the other half was smokers who reduced their consumption. Dr. W. Kip Viscusi testified on behalf of the defendants, asserting that higher cigarette taxes do not induce smokers to quit, and that higher costs only lead to reduced consumption. *Id.*

## DISCUSSION

### Standard of Review

We have jurisdiction in this appeal under 28 U.S.C. § 1292(a)(1), which provides in relevant part that "the courts of appeals shall have jurisdiction of appeals from [i]nterlocutory orders of the district courts of the United States . . . granting . . . injunctions." We review the district court's grant of a preliminary injunction to the City for abuse of discretion. *SEC v. Dorozhko*, 574 F.3d 42, 45 (2d Cir. 2009). An abuse of discretion exists if the district court "(1) based its ruling on an erroneous view of the law, (2) made a clearly erroneous assessment of the evidence, or (3) rendered a decision that cannot be located within the range of permissible decisions." *Lynch v. City of New York*, 589 F.3d 94, 99 (2d Cir. 2009) (internal quotation marks omitted).

The district court, however, does not receive "equal deference to every aspect of [its] decision. The abuse of discretion standard is used to evaluate the . . . court's application of the facts to the appropriate legal standard, and the factual findings and legal conclusions underlying

7

such decisions are evaluated under the clearly erroneous and *de novo* standards, respectively."
*Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 103 (2d Cir. 2009) (citation and brackets omitted); *see Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007) (determining findings of fact underlying a preliminary injunction are reviewed under a clearly erroneous standard).

**Preliminary Injunction: Irreparable Harm**

In general, a party requesting a preliminary injunction must establish "'(1) irreparable harm and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party.'" *Lynch*, 589 F.3d at 98 (quoting *Plaza Health Labs., Inc. v. Perales*, 878 F.2d 577, 580 (2d Cir. 1989)). In certain circumstances, generally when the party seeks a statutory injunction, we have dispensed with the requirement of showing irreparable harm, and instead employ a presumption of irreparable harm based on a statutory violation. *See United States v. Diapulse Corp. of Am.*, 457 F.2d 25, 27 (2d Cir. 1972) ("[T]he function of a court in deciding whether to issue an injunction authorized by a statute of the United States to enforce and implement Congressional policy is a different one from that of the court when weighing claims of two private litigants."). The district court determined that the City need not make a showing of irreparable harm since it was requesting an injunction statutorily authorized under the CMSA and the CCTA. We review *de novo* that legal conclusion.

In *SEC v. Management Dynamics, Inc.*, we recognized that when the SEC brings a securities action, it does so "as a statutory guardian charged with safeguarding the public interest." 515 F.2d 801, 808 (2d Cir. 1975). The equitable standards that apply in private

8

injection actions are not the same as those that apply in SEC actions because the injunctions the SEC seeks are "creatures of statute." *Id.* We do not require a showing of irreparable harm for "the issuance of an injunction in cases of this nature" since there is a "statutory sanction"; instead it is "enough if the statutory conditions for injunctive relief were made to appear." *Id.* (internal quotation marks omitted) (noting additionally that "[t]his principle has been applied in granting both permanent injunctions and preliminary injunctions").

We reiterated these principles in *SEC v. Unifund SAL*, 910 F.2d 1028, 1035-36 (2d Cir. 1990), and expanded them to include a railroad's claim for injunctive relief under tax law in *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 479 (2d Cir. 1995) ("[A] railroad seeking statutorily authorized injunctive relief from alleged tax discrimination . . . is not governed by these equitable criteria" and "need only demonstrate that there is reasonable cause to believe" a statutory violation will occur) (internal quotation marks omitted). In *Commodity Futures Trading Commission v. British American Commodity Options Corp.*, we referred to the "well-established rule" that agencies "need not prove irreparable injury or the inadequacy of other remedies as required in private litigation suits, but only that there is a reasonable likelihood that the wrong will be repeated." 560 F.2d 135, 141 (2d Cir. 1977). *See also Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 144 (2d Cir. 2005) ("A plaintiff who establishes that an infringer's use of its trademark creates a likelihood of consumer confusion generally is entitled to a presumption of irreparable injury" when seeking injunctive relief, a presumption that can be overcome if the party seeking the injunction has delayed in seeking the injunction); *Prayze FM v. FCC*, 214 F.3d 245, 248 (2d Cir. 2000) ("Where the government seeks injunctive

9

relief for a statutory violation, there is a presumption of irreparable harm" except when "the constitutionality of the statute allegedly violated was at issue").

The state statute, the CMSA, sets out the requirements that must be met before "any person injured by any violation or threatened violation of this article" can bring an injunction action. N.Y. Tax Law § 484(b)(1). The party requesting an injunction must demonstrate "a violation, or threatened violation, of any of the provisions of this article." *Id.* The federal statute, the CCTA, on the other hand, allows a state or local government to "obtain any other appropriate relief for violations of this chapter from any person . . . including civil penalties, money damages, and injunctive or other equitable relief." 18 U.S.C. § 2346(b)(2). In order to obtain an injunction under the federal law, a governmental entity must show a violation of the statute.

We agree with the district court that the City was not required to make a showing of irreparable harm to obtain an injunction under either the CMSA or the CCTA. Both statutes authorize injunctive relief for violations, 18 U.S.C. § 2346(b)(2), or threatened violations, N.Y. Tax Law § 484(b)(1), of their provisions. Both statutes make unlawful specific conduct related to the sale and possession of certain unstamped cigarettes, indicating Congress and the New York Legislature's determination that such conduct, in and of itself, is harmful to the public. Requiring a party seeking a statutorily-sanctioned injunction to make an additional showing of irreparable harm, therefore, is not required. We hold that the City is entitled to a presumption of irreparable harm with the caveat that it must show a likelihood of success on the merits of its CMSA and CCTA claims which are ultimately based, as discussed *infra*, on the applicability of §§ 471 and 471-e to the reservation vendors. Because we agree with the district court that there

10

is a presumption of irreparable harm, based on its findings regarding statutory violations it is not necessary to consider the court's alternative findings in that regard.

**Preliminary Injunction: Likelihood of Success on the Merits**

We turn now to the question of whether the City has demonstrated a likelihood of success on the merits of its claims. The City must make a "clear" and "substantial showing of a likelihood of success, both as to violation and risk of recurrence" for its CCTA and CMSA claims. *Unifund SAL*, 910 F.2d at 1039 (requiring a "clear showing" when the injunction sought is mandatory). The reservation vendors argue that there is no likelihood of success on the merits of the City's claims because the CCTA and the CMSA require proof of an underlying violation of New York tax law which does not exist here. As the argument goes, New York does not currently have a law that makes sales of untaxed cigarettes by reservation vendors illegal because the potentially applicable laws, New York Tax Code §§ 471 and 471-e, do not apply to reservation vendors.

For either the CMSA or CCTA to be violated,[3] there must be an underlying tax provision that requires the reservation vendors to purchase stamped cigarettes for resale, and it is this requirement that the defendants-appellants argue does not exist. In order to determine whether an underlying tax violation exists for the reservation vendors, we first examine the mechanisms

---

[3] The CMSA makes it a violation to knowingly "ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes." 18 U.S.C. § 2342(a). Contraband cigarettes, in turn, are a quantity of cigarettes in excess of 10,000 that "bear no evidence of the payment of applicable State or local cigarette taxes in the State or locality where such cigarettes are found." § 2341(2). The underlying tax violation in the CCTA occurs when "any agent, wholesale dealer or retail dealer . . . sell[s] cigarettes at less than cost." N.Y. Tax Law § 484(a)(1). The "cost" of cigarettes under the CCTA includes the tax stamps. Thus, selling cigarettes without a required tax stamp means that the cigarettes are sold below cost, and their sale violates the CCTA. § 483(a)(1).

11

of New York's cigarette taxation framework, including recent case law interpreting that framework.

**New York's Cigarette Taxing Framework**

The answers to the questions at issue hinge on whether cigarette vendors on the Poospatuck Reservation violate state and federal law by selling untaxed cigarettes to people who are not members of the Unkechauge Nation. While federal tax law prohibits taxing cigarettes sold by Native Americans to other tribal members from the same reservation, *see generally Moe v. Confederated Salish and Kootenai Tribes of Flathead Reservation*, 425 U.S. 463, 480-81 (1976), states can impose taxes upon the sale of cigarettes to non-reservation consumers provided the taxing scheme is not "unduly burdensome," *Dep't of Taxation and Fin. of New York v. Milhelm Attea & Bros., Inc.*, 512 U.S. 61, 76 (1994). *See also Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Okla.*, 498 U.S. 505, 514 (1991).

New York State has a somewhat labored history as it concerns taxing sales of cigarettes on Native American reservation lands. Under New York Tax Law § 471, passed in 1939, a tax is imposed "on all cigarettes possessed in the state by any person for sale" except when the "state is without power to impose such tax." N.Y. Tax Law § 471. Section 471(2) sets out the taxation scheme, requiring State-licensed agents, usually wholesale cigarette distributors, to purchase tax stamps that are then affixed to the cigarette packages. The stamp cost is built into the cost of the cigarettes and passed along to the ultimate consumer. N.Y. Tax Law § 471(2). If cigarettes are unstamped, the taxes on them have not been prepaid.

Although enacted over forty years earlier, § 471 was not enforced against Native American vendors until 1988 when the New York DTF adopted regulations that created a taxing

12

mechanism for sales to non-Tribal members. *Milhelm Attea & Bros., Inc.*, 512 U.S. at 65. Ruling on a challenge to the enforcement of the DTF regulations, the Supreme Court approved the use of § 471 in conjunction with the DTF regulations as a method to tax cigarette sales made by reservation vendors to non-Tribal members. *Id.* at 78. The thrust of the DTF regulations allowed reservation vendors to sell untaxed cigarettes to tribal members for their own use but limited the quantity of cigarettes sold to an amount that would fill the "probable demand" of the individuals on the reservation. *Id.* at 65-66. The regulations set out alternative methods of determining the "probable demand" of individuals in the relevant tribe—either through information from the tribe itself or through an approximation based on the average cigarette consumption in New York. *Id.* at 66. After determining the probable demand, the DTF would issue tax-exemption coupons to the tribal vendors who would then redeem them with the wholesalers. *Id.* These regulations, however, were repealed in 1998, leaving § 471 standing alone. The DTF adopted a policy of forbearance at the time of repeal, and subsequently it suspended attempts to collect tax from all cigarette sales on reservation lands. *See Cayuga Indian Nation of New York v. Gould*, 884 N.Y.S.2d 510, 514 (N.Y. App. Div. 2009).

In 2005, the New York Legislature (the "Legislature") revisited the issue of taxing certain cigarette sales on reservations. The Legislature passed New York Tax Law § 471-e, setting up a tax-exempt coupon program for cigarette sales on reservation land. N.Y. Tax Law § 471-e(2). This provision had an effective date of March 1, 2006 and "provided that any actions, rules and regulations necessary to implement the provisions of this act on its effective date are authorized and directed to be completed on or before such date." L. 2005, ch. 63, part A, § 4. The DTF issued an advisory opinion on March 16, 2006 that stated its intent: (1) to continue the

forbearance policy until all issues surrounding taxing reservation cigarette sales were addressed and (2) not to begin enforcement of § 471-e on its effective date. N.Y. State DTF Advisory Op. No. TSB-A-06[2]M, at 3-4.

In a subsequent challenge to § 471-e, the Appellate Division, Fourth Department, determined the provision was not "in effect" because the DTF failed to print or issue tax exempt coupons for reservation vendors, "and no determination ha[d] been made by the Department with respect to the probable demand for or proper distribution of such coupons." *Day Wholesale, Inc. v. State*, 856 N.Y.S.2d 808, 811-12 (N.Y. App. Div. 2008). "The enactment of the Indian tax exemption coupon system in section 471-e was intended, in large measure, to provide such a means for verifying tax-exempt cigarette purchases on Indian reservations." *Id.* at 812. Without the coupon system, the Appellate Division reasoned, there was no adequate method "to serve the intent of the Legislature to collect taxes that are legitimately due while at the same time 'leav[ing] ample room for legitimately tax-exempt sales.'" *Id.* (quoting *Milhelm Attea & Bros. Inc.*, 512 U.S. at 76). The New York Court of Appeals did not review the *Day Wholesale* decision.

In *Cayuga Indian Nation of New York*, the Fourth Department again addressed the sale of untaxed cigarettes by reservation vendors. 884 N.Y.S.2d at 511. The court analyzed the issue of whether § 471-e "provides the exclusive means by which to tax cigarette sales on an Indian reservation" to people not members of the reservation tribe or instead § 471 "provides an independent basis for imposing a tax on such sales." *Id.* In *Cayuga*, the majority acknowledged the plain language of § 471, concluding that on-reservation sales to tribal members fell in the category of sales the state was "without power" to tax, but that the state "has the power to tax on-

14

reservation sales to non-Indians and non-member Indians." *Id.* at 514. The majority then examined the methods that New York has employed to tax sales to non-Indians and non-member Indians, focusing on § 471-e as the most recent attempt by the Legislature to set up a taxing mechanism. Looking at the legislative intent in enacting § 471-e, the majority concluded that it was intended "to overhaul the statutory scheme and . . . to provide a single statutory basis for taxing cigarette sales on qualified reservations." *Id.* at 516. The court then turned to the *Day Wholesale* decision, reiterating its holding that § 471-e was not in effect. The majority concluded that in light of "the sovereignty considerations attendant upon imposing and collecting a state cigarette tax on reservation sales" under § 471, as well as the non-effect of § 471-e under *Day Wholesale*, "there is no statutory basis for the imposition of a cigarette tax on a qualified reservation." *Id.* at 517. The *Cayuga* dissent took the contrary position, reasoning that the *Day Wholesale* decision did not "disturb the underlying obligation to pay the taxes imposed by section 471. To the contrary, we recognized that the tax obligation on cigarettes stems from section 471, not section 471-e . . . ." *Id.* at 523 (Peradotto, *J.*, dissenting).

In its order imposing a preliminary injunction, the district court concluded that the New York Court of Appeals would agree not with the *Cayuga* majority but with Justice Peradotto's dissent. The district court examined the plain language of § 471, noting that nowhere was an "exception made in the statute for sales of cigarettes by or to Native Americans or by retailers on Indian reservations." *Golden Feather Smoke Shop, Inc.*, 2009 WL 2612345, at *27.

Not surprisingly, the City argues that § 471-e merely sets up a system to collect a tax that is imposed by § 471. In support of its position, the City cites to the *Cayuga* dissent and the district court's adoption of that dissent. According to the City, the *Cayuga* majority failed to

15

address the plain language of § 471, which the district court determined unambiguously imposed a tax upon all cigarettes possessed by vendors that the state has the power to tax. Section 471-e only supports this conclusion as it sets up the collection mechanism for the tax; whether it is in effect following *Day Wholesale* does not remove the underlying obligation imposed by § 471. The City argues that this position is further supported by *United States v. Morrison*, 596 F. Supp. 2d 661 (E.D.N.Y. 2009), and its determination that § 471 does not need regulations governing collection of taxes in order for statutory liability to attach. *Id.* at 678.

The City also highlights several canons of construction, initially emphasized by the district court, that it argues were ignored by the *Cayuga* majority. First, the City points to the rule against implied repeals, arguing that § 471 still applies to the reservation vendors, regardless of the effect of § 471-e. In addition, according to the City, the district court was correct in pointing to the rule of harmonious construction that allows § 471 to be read as imposing the tax that the mechanism in § 471-e collects. Second, the City reiterates the district court's admonishment that the *Cayuga* majority "runs afoul of the established rule of construction that 'where the Legislature lists exceptions in a statute, items not specifically referenced are deemed to have been intentionally excluded.'" *Golden Feather Smoke Shop*, 2009 WL 2612345, at *30 (quoting *Weingarten v. Bd. of Trs. of N.Y. City Teachers' Retirement Sys.*, 780 N.E.2d 174, 179 (N.Y. 2002)). The City, in line with the district court, identified the three tax exceptions included in § 471, to wit, cigarettes: 1) sold under circumstances the state is "'without power'" to tax, 2) "'sold to the United States,'" or 3) "'sold to or by a voluntary unincorporated organization of the armed forces of the United States.'" *Id.* (quoting N.Y. Tax Law § 471). There is no

16

exemption for reservation vendors in this list, and the district court disagreed with the *Cayuga* majority and its inference that one does exist for the reservation vendors.

The City concludes by pointing to the district court's recitation of the legislative history of taxing cigarette sales by reservation vendors. The City contends this history demonstrates that § 471-e was not a revision of § 471 but rather the latest effort by the Legislature to collect the taxes imposed by § 471 on reservation cigarette sales to non-tribal members. *Id.* at *33. According to the City, the legislative history supports the district court's adoption of the *Cayuga* dissent and was overlooked by the *Cayuga* majority.

The defendants urge us on the other hand to embrace the majority decision in both the *Cayuga* and *Day Wholesale* decisions as the only settled law concerning § 471 and § 471-e. They argue that the district court's reliance on the *Cayuga* dissent puts undue emphasis on a single judicial determination as evidence indicating the Court of Appeals would reverse the *Cayuga* majority. That is, one lone dissent that lays out an alternative interpretation of the legislative history of § 471, according to the defendants, is not sufficiently persuasive for the district court to reach a conclusion opposite to that reached by the Appellate Division. In addition, the defendants argue the district court's interpretation of § 471 was done "in a vacuum" and thus ignores the circumstances under which the reservation vendors are allowed to operate. Because under federal common law the reservation vendors, when selling to members of the Unkechauge Indian Nation, are relieved of the requirement that the cigarettes have to be stamped, § 471 alone cannot be used to require those vendors to possess stamped cigarettes. Any other reading ignores both the use of § 471-e to address the need for a special taxing mechanism for

17

reservation vendors, and the *Day Wholesale* Court's determination that § 471-e is no longer "in effect," thus leaving no applicable mechanism where one is required.

Both the smoke shop vendors and the City offer us competing interpretations of §§ 471 and 471-e, each supported by cogent arguments and prior judicial analysis. Without in any way limiting future analysis of the issue, we observe that § 471 imposes a tax on all cigarettes unless the cigarettes are "sold under such circumstances that this state is without power to impose such tax." Under the Fourth Department's analysis in *Day Wholesale, Inc.*, 856 N.Y.S.2d at 811, § 471-e, which establishes the mechanism for "the assessment or collection of" these taxes, *see Milhelm Attea & Brothers, Inc.*, 512 U.S. at 75, is not in effect. Nor do we divine that any other mechanism exists by which to assess and collect such taxes. Given this state of affairs does the absence of any such mechanism applicable to taxes imposed on cigarette sales on reservations give rise to "circumstances that [render New York] without power to impose such tax"? N.Y. Tax Law § 471. Because resolution of the issue requires us to decide what is strictly an issue of statutory interpretation under New York law, we will now examine whether it is appropriate to certify that issue to the New York Court of Appeals.

**Certification**

Our local rules, as well as New York law, allow this Court to certify questions of state law to the New York Court of Appeals where no controlling precedent exists. *See* 2d Cir. R. 27.2 ("If state law permits, the court may certify a question of state law to that state's highest court."); 22 N.Y.C.R.R. § 500.27(a) ("Whenever it appears . . . that determinative questions of New York law are involved in a case pending before that court for which no controlling precedent of the Court of Appeals exists, the court may certify the dispositive questions of law to

18

the Court of Appeals."). Certification, however, should be done "sparingly, mindful that it is our job to predict how the New York Court of Appeals would decide the issues before us." *Highland Capital Mgmt., LP v. Schneider*, 460 F.3d 308, 316 (2d Cir. 2006) (internal quotation marks and brackets omitted).

Our decision to certify unsettled legal questions is based on, among other factors: "(1) the absence of authoritative state court decisions; (2) the importance of the issue to the state; and (3) the capacity of certification to resolve the litigation." *O'Mara v. Town of Wappinger*, 485 F.3d 693, 698 (2d Cir. 2007); *see also Morris v. Schroder Capital Mgmt. Int'l*, 445 F.3d 525, 531 (2d Cir. 2006) (listing the three factors as main issues to consider).

On October 14, 2009, this Court denied appellants' emergency motion to stay the preliminary injunction. In our order, we requested the parties to brief the necessity of certifying two questions to the New York Court of Appeals that query the reach of New York Tax Law §§ 471 and 471-e and whether reservation vendors' sale of unstamped cigarettes opens them to liability, criminal or otherwise. Whether we certify the questions as originally posed or other questions entirely depends upon our own consideration of the three primary factors of certification. *See Highland Capital Mgmt. LP*, 460 F.3d at 316.

First, although some appellants argue that New York case law on these issues is well-settled, we disagree. We recognize that although we are not "strictly bound by state intermediate appellate courts, rulings from such courts are a basis for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *DiBella v. Hopkins*, 403 F.3d 102, 112 (2d Cir. 2005) (internal quotation marks omitted). As the district court laid out in its order granting a

19

preliminary injunction to the City, there are a number of factors that may persuade the Court of Appeals in its review of *Cayuga* to adopt the rationale of Justice Peradotto's dissent. The plain language of § 471 is that a tax is "imposed . . . on all cigarettes possessed in the state by any person for sale" except for cigarettes "sold under such circumstances that this state is without power" to tax. N.Y. Tax Law § 471. The language of § 471-e, however, only gives the state a method by which to collect the taxes actually imposed by § 471. *See* § 471-e.

The New York Court of Appeals has not spoken directly on the issue of the applicability of § 471 alone to reservation cigarette sales to non-Tribal members, nor has it addressed whether § 471-e is actually in effect considering the DTF's explicit refusal to implement it with respect to reservation vendors. In its only case addressing taxation of cigarette sales on Native American reservations, *Milhelm Attea & Bros., Inc. v. Department of Taxation and Finance of New York*, 615 N.E.2d 994 (N.Y. 1993), the Court of Appeals addressed the validity of the 1988 regulations enacted to work in concert with § 471 to impose a tax collection scheme. At that time the Court of Appeals determined the regulations "impose[d] *significant* burdens on the wholesaler," a burden not to be suffered in "the field of regulating Indian traders." *Id.* at 424, 427. That field, reasoned the court, was preempted by Congress through the Indian trader statutes thus disallowing state laws that impose "additional burdens upon traders." *Id.* at 424 (internal quotation marks omitted). The United States Supreme Court disagreed, determining instead that states may impose "reasonable regulatory burdens upon Indian traders" in order to enforce "valid state taxes." *Milhelm Attea & Bros., Inc.*, 512 U.S. at 74. The Court cautioned that "ample room for legitimately tax-exempt sales" must be left in determining "probable demand," room that the

20

New York regulations contained. *Id.* at 76. The New York Court of Appeals has not since addressed taxation of sales of cigarettes on reservations.

Second, the question of taxing cigarette sales on reservation lands is one that has been addressed by the New York State courts, the New York Legislature, the Department of Taxation and Finance, and even New York's Governor, all with varying outcomes. We recognize that the New York Court of Appeals is in a far better position to interpret the variety of laws, regulations, and state case law by which the issue will be determined. Thus certification on this issue will address an important issue of state law that to this point remains unresolved. *See Runner v. N.Y. Stock Exch.*, 568 F.3d 383, 389 (2d Cir. 2009).

Third, the questions we seek to address are purely legal. An answer from the New York Court of Appeals, therefore, will in all likelihood end this portion of the litigation. On the one hand, if §§ 471 and 471-e, individually or in combination, do not impose a tax on cigarettes sold by reservation vendors, then there would be no basis on which the City could pursue in federal court an injunction under either the CCTA or the CMSA. Conversely, if §§ 471 and 471-e, individually or in combination, do impose a tax such that the failure to pay the tax is a basis for a CCTA or a CMSA violation, the case will be returned to the district court for further proceedings, and the answers to these questions of law will ensure that any continuing litigation is resolved under an authoritative interpretation by New York's highest court.

In deciding whether to certify questions about the applicable tax laws, we take notice that the *Cayuga* decision addresses similar questions and that the Appellate Division, Fourth Department, has granted leave to appeal that decision to the New York Court of Appeals. We are informed that the Court of Appeals has set a March 25, 2010 date for oral argument in *Cayuga*.

21

We also understand that *Cayuga* raises a separate, potentially dispositive issue concerning the boundaries of a "qualified reservation" under § 470(16)(a) and that a decision on that latter ground could relieve the Court of Appeals having to decide in that case whether § 471 alone or in conjunction with § 471-e requires that cigarettes sold by reservation vendors to non-tribal members be stamped. Thus, we understand that if the New York Court of Appeals in *Cayuga* does interpret §§ 471 and 471-e, it may well decline certification in this case. Having in mind the circumstances under which we seek these interpretations, we respectfully certify the following questions to the Court of Appeals of the State of New York:

> (1) Does N.Y. Tax Law § 471-e, either by itself or in combination with the provisions of § 471, impose a tax on cigarettes sold on Native American reservations when some or all of those cigarettes may be sold to persons other than members of the reservation's nation or tribe?

> (2) If the answer to Question 1 is "no," does N.Y. Tax Law § 471 alone impose a tax on cigarettes sold on Native American reservations when some or all of those cigarettes may be sold to persons other than members of the reservation's nation or tribe?

We invite the New York Court of Appeals to reformulate these questions in any way that it sees fit. In articulating the questions as we have, we do not intend to limit the scope of the New York Court of Appeals' analysis or its response. The certified questions may be deemed expanded to cover any further pertinent issue that the Court of Appeals thinks it appropriate to address.

It is hereby Ordered that the Clerk of the Court transmit to the Clerk of the New York State Court of Appeals a Certificate in the form attached, together with a copy of this opinion and a complete set of the briefs, appendices, and record filed by the parties in this Court. This panel will retain jurisdiction to decide the case once we have had the benefit of the views of the New

22

York Court of Appeals or once that court declines certification. Finally, we order the parties to

bear equally any fees and costs that may be requested by the New York Court of Appeals.

**Conclusion**

For the reasons stated above, we respectfully certify the following questions to the New

York Court of Appeals:

(1) Does N.Y. Tax Law § 471-e, either by itself or in combination with the provisions of § 471, impose a tax on cigarettes sold on Native American reservations when some or all of those cigarettes may be sold to persons other than members of the reservation's nation or tribe?

(2) If the answer to Question 1 is "no," does N.Y. Tax Law § 471 alone impose a tax on cigarettes sold on Native American reservations when some or all of those cigarettes may be sold to persons other than members of the reservation's nation or tribe?