OPINION OF THE COURT
George Bundy Smith, J.
The petition filed by the State of New York seeks an order pursuant to Executive Law § 63 (12) which (1) permanently enjoins respondents from engaging in certain allegedly fraudulent, deceptive and illegal acts; (2) declares invalid all agreements between respondents and consumers pursuant to Abandoned Property Law § 1416; (3) directs respondents jointly and severally to pay restitution to all consumers who paid money to respondents; (4) directs each respondent to pay penalties pursuant to General Business Law § 350; (5) enjoins respondents from engaging in the business of providing information on abandoned assets held by the New York State Comptroller until such time as they execute, file and deliver to petitioner a *615 performance bond in the sum of $1 million; and (6) awards petitioner the ordinary costs of this proceeding plus $2,000 in costs pursuant to CPLR 8303 (a) (6).
Respondents, Abandoned Funds Information Center, Dynatron Computer Systems, Inc., and George Meyer, are in the business of providing information to consumers and otherwise aiding them in claiming abandoned property held by the Comptroller of the State of New York.
The petition alleges four causes of action: (1) Respondents engaged in false advertising in violation of General Business Law § 350. (2) Respondents engaged in repeated and persistent fraudulent conduct in violation of Executive Law § 63 (12). (3) Respondents charged illegal fees in violation of Abandoned Property Law § 1416 (2). (4) Respondents entered into invalid agreements in violation of Abandoned Property Law § 1416 (1).
The respondents deny that the statements made in their solicitations are false or misleading. They argue that Abandoned Property Law § 1416 is inapplicable since it regulates agreements to locate property, not the activity of respondents, which consists of providing information on abandoned assets. They submit that even if the provision were applicable, their solicitations comply with the provision. Respondents also make the following arguments: (1) The petition fails to state a cause of action. (2) The State is illegally holding these funds and has commenced this action to halt respondents’ efforts to return assets to the public. (3) The petitioner’s delay in instituting the action constitutes laches. (4) Abandoned Property Law § 1416, if construed to apply to respondents’ efforts to provide the public with information, violates US Constitution 14th Amendment and NY Constitution, article I, §§ 6, 8.
Executive Law § 63 (12) provides as follows: "Whenever any person shall engage in repeated fraudulent or illegal acts or otherwise demonstrate persistent fraud or illegality in the carrying on, conducting or transaction of business, the attorney general may apply, in the name of the people of the state of New York, to the supreme court of the state of New York, on notice of five days, for an order enjoining the continuance of such business activity or of any fraudulent or illegal acts, directing restitution and damages and, in an appropriate case, cancelling any certificate filed under and by virtue of the provisions of section four hundred forty of the former penal law or section one hundred thirty of the general business law, *616 and the court may award the relief applied for or so much thereof as it may deem proper. The word 'fraud’ or 'fraudulent’ as used herein shall include any device, scheme or artifice to defraud and any deception, misrepresentation, concealment, suppression, false pretense, false promise or unconscionable contractual provisions. The term 'persistent fraud’ or 'illegality’ as used herein shall include continuance or carrying on of any fraudulent or illegal act or conduct. The term 'repeated’ as used herein shall include repetition of any separate and distinct fraudulent or illegal act, or conduct which affects more than one person.”
The petitioner alleges that the respondents’ solicitations contain false and misleading statements which are material. These misrepresentations are as follows: (1) New York State confiscated money belonging to consumers. (2) The contacted consumers are the rightful owners and recipients of the assets held by the Comptroller. (3) The amount due the consumer is substantial. (4) The Comptroller requires the consumer to know the name of the source of the funds as a prerequisite to reclaiming the property. (5) The State does not provide consumers with information on the origins of the funds it holds. (6) The respondents have restored $979 million in abandoned funds to the consumers, while the State has returned none of this property. (7) Failure to act at once results in the State retaining the funds forever.
The term "fraudulent or deceptive practices” as used in relation to the regulation of commercial activity is generally interpreted to include those acts which may be characterized as dishonest and misleading. As the purpose of restrictions on commercial activity is to afford the consuming public expanded protection from deceptive and misleading fraud, the application of the term is ordinarily not limited to instances of intentional fraud in the traditional sense, and proof of intent to defraud is not essential. (See, Allstate Ins. Co. v Foschio, 93 AD2d 328 [2d Dept 1983].)
General Business Law § 350 makes false advertising unlawful. "False advertising” is defined in section 350-a as follows: "The term 'false advertising’ means advertising, including labeling, which is misleading in a material respect; and in determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light *617 of such representations with respect to the commodity to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual.” (As added by L 1963, ch 813, eff Sept. 1, 1963.)
In Guggenheimer v Ginzburg (43 NY2d 268, 273 [1977]) the Court of Appeals held that to establish a cause of action for false advertising, it need not be shown that the consumers are being or were actually injured. "In weighing a statement’s capacity, tendency or effect in deceiving or misleading customers, we do not look to the average customer but to the vast multitude which the statutes were enacted to safeguard— including the ignorant, the unthinking and the credulous who, in making purchases, do not stop to analyze but are governed by appearances and general impressions”.
The solicitations do contain false and material representations which mislead consumers to think that only the respondents can supply the information necessary to reclaim property from the State.
First, consumers are led to believe that they must know the source of the funds before they can be claimed. Respondents’ statements to the consumer include the following:
"In order to reclaim this money it is necessary to know from where the money came * * * The fact that the State has collected One Billion dollars in abandoned funds from innocent people such as yourself proves how difficult it is to find out this information on your own.
"We provide you with the specific details of where your funds are (information N.Y. demands from you-but will not themselves supply)”.
Consumers are thus led to believe that the State requires consumers to know the source of the funds, but refrains from providing that information. However, Anthony F. Taverni, Administrator of the Abandoned Property in the Department of Audit and Control, states that the Comptroller does not require a consumer to identify the source of funds in order to obtain abandoned funds. He also maintains that consumers can obtain any information regarding the source of funds by requesting that information from New York State. The publication "Abandoned Property, Notice of Abandoned Property Held by the State of New York”, which consists of a list of names of persons appearing to be entitled to abandoned property, contains a procedure for reclaiming abandoned property. It provides that:
*618 "Claims should be by letter * * * which should include the complete numeric code appearing at the left of the name and address of the person appearing to be entitled and the name of the organization which transferred the property to the State Comptroller.
"The names of the organizations which transferred property are listed in numeric code order in this publication after the list of owners. To identify the source of specific owner’s name, match the first six digits of the numeric code of the owner with the organization code.”
These instructions indicate clearly that the identity of the source of the funds, if needed, can be obtained by the public from the Comptroller. Taverni indicates that the source of information may be requested under certain circumstances. The use of the word "should” as regards submission of the name of the source institution is not indicative of a mandatory requirement.
Secondly, the solicitations falsely and misleadingly claim that the respondents have irrefutable proof that the contacted consumer is entitled to the money held by the State. The solicitations state that: "We have conclusively established that you are rightfully entitled to a sum of money * * * Since our service is guaranteed, obviously we would not take the trouble to notify you unless we already possessed irrefutable proof of your entitlement.”
In its abandoned property publication the Comptroller’s office, which is the source of this information, makes it clear that its listing consists only of the names of persons who appear to be entitled to moneys held by the Comptroller (see, Abandoned Property Law § 1402 [3] [a]). Further, pursuant to Abandoned Property Law § 1046 (1) (b) only the Comptroller possesses full and complete authority to determine claims for abandoned property.
Thirdly, the solicitations also contain language which misleads the consumer into thinking that he or she is entitled to a substantial amount of money. The language reads: "How can we offer this? We couldn’t unless we felt certain you have a substantial amount of money coming to you.” The parties disagree on the amount of the average refund. The petitioner claims that the usual refund is less than $100, while respondent claims that the average is $1,450. Whichever figure is accurate, the statistics indicate that the refunds vary from very small amounts to significant amounts. In view of this *619 fact, the certainty of the language used misleads the contacted consumer to believe that he or she is definitely entitled to a substantial recovery.
Fourth, the solicitations contain the statement that, "We don’t want to frighten you with a time limit, but if you fail to act, your funds will remain with New York state for good”. Although the statement is not blatantly false, it tends to create the impression that the consumer must respond to respondents’ offer at once in order to prevent the State from keeping the property permanently.
The solicitations thus contain false and misleading material representations which violate General Business Law § 350.
The petitioner alleges further that the agreements entered into by respondents and their customers are invalid under Abandoned Property Law § 1416.
Abandoned Property Law § 1416 reads as follows:
"§ 1416. Restriction on agreement to locate abandoned property
"1. No agreement to locate, property held by the comptroller pursuant to this chapter shall be valid unless that agreement:
"(a) is in writing and signed by the property owner;
"(b) discloses the nature of the property; and
"(c) discloses the name and address of the holder.
"2. No such agreement shall be valid if it provides for payment of a fee in excess of fifteen percent of the value of recoverable property.
"3. Nothing in this section shall be construed to prevent an owner from asserting, at any time, that any agreement to locate property held by the comptroller is based on an excessive or unjust consideration.” (As added by L 1980, ch 173, §1.)
The petition alleges that by charging a set fee of $32 for the service, respondents violate the 15% rule of section 1416 (2). The respondents argue that the section is inapplicable since it applies to agreements to locate property, not to agreements to provide information. The court disagrees. The solicitations inform consumers of the location of these abandoned funds and offer further aid in reclaiming them. The "plain meaning” of the provision covers the type of business conducted by respondents which allegedly attempts to unite abandoned property with its owners. (See, bill jackets.) The legislative history of section 1416 supports the conclusion that it applies *620 to the respondents. The document entitled "Ten Day Bill, Budget Report on Bills” states "This bill * * * would add a new section 1416 to the Abandoned Property Law to provide protection to property owners who hire and pay locators to identify and assist in claiming abandoned property.”
Respondents cite Secretary of State of Md. v Munson Co. (467 US 947) to support their argument that the imposition of a limitation on the fees they collect for providing information violates US Constitution 1st Amendment. That case, however, dealt with statutory limitations on the amounts paid to fund raisers to disseminate information on behalf of charitable organizations. Respondents’ solicitations represent commercial speech, which, while protected by the 1st Amendment may be subject to State regulation where (1) it is unlawful and misleading, (2) the asserted government interest to be served by the restriction on commercial speech is substantial; and (3) it is determined upon positive answer to both inquiries that the regulation directly advances the governmental interest asserted and is not more extensive than necessary to serve that interest. (See, Central Hudson Gas & Elec. v Public Serv. Commn., 447 US 557 [1980]; Bolger v Youngs Drug Prods. Corp., 463 US 60 [1983].) The State’s efforts to regulate respondents’ activities meet the above requirements.
Respondents now charge a fee of $32 for their services ($30 plus $2 for shipping and handling). The guarantees offered vary. In a letter to a consumer, dated August 24, 1984, respondents offer a full refund if less than twice as much as the service costs is recovered. In a letter to a consumer, dated September 12, 1984, respondents offer a refund of the difference between the money recovered and the fee charged if a consumer fails to collect 100% of the fee. A letter dated August 2, 1984 offers a full refund of the fee if the consumer fails to recover the money due. The flat fee structure offered by the respondents is barred by Abandoned Property Law § 1416 (2) since it may result in a fee of more than 15% of the recoverable property. Other violations include a failure to enter a written agreement (Abandoned Property Law § 1416 [1] [a]) which discloses the address of the holder (Abandoned Property Law § 1416 [1] [c]).
The respondents argue that they received insufficient prelitigation notice pursuant to General Business Law § 350-b which requires that the Attorney-General give potential respondents formal notice of impending litigation, and an opportunity to convince him that a lawsuit is unwarranted. Respon *621 dents claim that petitioner failed to give them an adequate opportunity to be heard by serving the notice shortly before a religious holiday and limiting the discussion to a phone conference. It appears that despite the timing of the notice, respondents’ attorney was able to confer with his clients and present several arguments against the filing of the petition. Respondents had an adequate opportunity to show orally or in writing why an action pursuant to General Business Law § 350 should not be commenced.
Executive Law § 63 (12) provides that the Attorney-General may apply for an order enjoining the continuance of fraudulent or illegal business activity or any fraudulent or illegal acts. Respondents are temporarily enjoined from soliciting consumers with statements which imply that (1) the State requires the name of the source of abandoned funds and fails to provide that information to consumers; (2) consumers are entitled to a substantial refund; (3) respondents possess irrefutable proof that the solicited consumer is the rightful owner of the money held by the State; and (4) that urgent action is necessary to prevent the State from retaining the abandoned property permanently.
The agreements entered into between respondents and consumers are not valid pursuant to Abandoned Property Law § 1416 (1) (a), (c) and (2). Henceforth, agreements must comply with said provisions. Respondents are temporarily enjoined from failing to comply with the requirements of Abandoned Property Law § 1416.
The issues of a permanent injunction, restitution and refund, penalties, bond, and costs are to be set down for a hearing and trial before a judge of this court.