OPINION OF THE COURT
Beatrice S. Burstein, J.
Plaintiff seeks an order, inter alia, pursuant to General Business Law §§ 350 and 350-a, preliminarily enjoining defendant Hunter Marine Corp. "from advertising any Hunter Marine Corp. product within the State of New York”.
The court finds the following facts are not in controversy for the sole purpose of this determination. Plaintiff saw an advertisement in the November 1985 issue of "Yachting”, a nationally distributed magazine sold in New York State. The advertisement was placed by defendant Hunter Marine Corp. (Hunter), a manufacturer of sailboats, to introduce its new boat, the Hunter 45. After touting the qualities of the Hunter 45, at its conclusion the advertisement has two lists separated by a white space. The first of these, three lines long, is entitled "Specifications”; the second, 13 lines long, is entitled "Cruise Pac”. Below these two lists, separated by another white space, is the statement "Specifications subject to change without notice”. Some time after reading this advertisement plaintiff visited Hunter’s plant in Florida. He then purchased a Hunter 45 from defendant North Shore, an independent contractor which deals in Hunter products, among others. The sale, at a price of $109,500 less plaintiff’s trade-in allowance, was made pursuant to a written contract signed by both parties. On the face of that contract is typed a list of certain equipment included in the sale and, inter alia, the following *913 statement: " — plus any and all equipment or hardware nationally advertised in Yachting”. Also typed are modifications to some of the printed contract terms which appear on the reverse side. Paragraph 5 printed on the reverse side is not modified. It states: "changes by manufacturer. I understand that the manufacturer may make any changes in the model, or the designs, or any accessories and parts from time to time, and at any time. If the manufacturer does make changes, neither you nor the manufacturer are obligated to make the same changes in the unit I am purchasing and covered by this order, either before or after it is delivered to me.”
Plaintiff alleges defendant North Shore delivered the boat without all of the equipment or hardware nationally advertised in "Yachting” magazine. Plaintiff indicates the missing items were a cockpit table and a mast winch. These items are listed in the advertisement as included in the "Cruise Pac”. North Shore’s president avers that the winch was upgraded and replaced with an improved mainsail reefing system while the cockpit table, a "miniscule item”, was deleted by Hunter, and the package of changes which replaced it and other items added $18,000 worth of improvements to the boat.
Section 350-d of article 22-A of the General Business Law, which permits a private party to bring an action in his own name to enjoin false advertising, specifically states that article 22-A "neither enlarges nor diminishes the rights of parties in private litigation except as provided in this section”. Therefore, the criteria which a party must meet to obtain a preliminary injunction are those traditionally required for such relief. (See, Quinn v Aetna Life & Cas. Co., 96 Misc 2d 545 [Sup Ct, Queens County 1978].) This "drastic” remedy will not be granted unless a plaintiff has met the heavy burden of demonstrating a clear right to it, by showing that he is likely to succeed on the merits of his claim, that irreparable injury will result absent injunctive relief and that the equities balance in his favor. (Brand v Bartlett, 52 AD2d 272 [3d Dept 1976]; Albini v Solork Assocs., 37 AD2d 835 [2d Dept 1971].)
As to the first of these three criteria, section 350 of the General Business Law makes false advertising unlawful. Section 350-a defines false advertising as follows: "The term 'false advertising’ means advertising * * * which is misleading in a material respect; and in determining whether any advertising is misleading, there shall be taken into account * * * not only representations made by statement * * * but also the extent to which the advertising fails to reveal facts material in the *914 light of such representations with respect to the commodity to which the advertising relates under the conditions prescribed in said advertisement”. To establish a cause of action pursuant to these two sections, a plaintiff is only required to demonstrate that the advertisement was misleading in a material respect and he was injured, while an injured person has been defined as one who was misled or deceived by such an advertisement. (Geismar v Abraham & Straus, 109 Misc 2d 495 [Dist Ct, Suffolk County 1981].) The dollar amount of injury involved in such a claim is not relevant. A private individual may seek to recover "actual damages or fifty dollars, whichever is greater”. (General Business Law § 350-d [3].) Thus, the statute contemplates minimal monetary awards. Furthermore, courts have traditionally taken "an expansive view” in determining whether false advertising has occurred. (Beslity v Manhattan Honda, 120 Misc 2d 848 [App Term, 1st Dept 1983].) Therefore, a stringent test has not been applied to determine whether an advertisement is false. The question in a false advertising case is not even whether the average person would have been deceived. (People v Volkswagen, 47 AD2d 868 [1st Dept 1975]; Beslity v Manhattan Honda, 120 Misc 2d 848 [App Term, 1st Dept 1983], supra.) To establish whether a statement has the capacity, tendency or effect of deceiving or misleading a customer, the Court of Appeals has stated: "[W]e do not look to the average customer but to the vast multitude which the statues were enacted to safeguard— including the ignorant, the unthinking and the credulous who, in making purchases, do not stop to analyze but are governed by appearances and general impressions” (Guggenheimer v Ginzburg, 43 NY2d 268, 273 [1977]). While the court in Guggenheimer was concerned with the Administrative Code of the City of New York, this concept has been applied to article 22-A also. (See, e.g., People v Volkswagen, 47 AD2d 868 [1st Dept 1975], supra; Beslity v Manhattan Honda, 120 Misc 2d 848 [App Term, 1st Dept 1983], supra; State of New York v Abandoned Funds Information Center, 129 Misc 2d 614 [Sup Ct, NY County 1985].) This is in keeping with the purpose for which section 350-d of the General Business Law was enacted. As then Governor Carey stated: "by authorizing private actions, providing for a minimum damage recovery and permitting attorney’s fees [we] will encourage private enforcement of these consumer protection statutes, [General Business Law §§ 349-350], add a strong deterrent against deceptive business practices and supplement the activities of the Attorney Gen *915 eral in the prosecution of consumer fraud complaints.” (Governor’s approval mem, 1980 NY Legis Ann, at 147.) With this in mind the court turns to the advertisement at hand.
Plaintiff claims the advertisement is false because the Hunter 45 does not come with all of the equipment listed under "Cruise Pac”. Hunter essentially admits that, but claims that the advertisement states that specifications are subject to change without notice. However, as described previously, supra, the advertisement has two distinct sections separated by a white space, one for "Specifications” and the other entitled "Cruise Pac”. Therefore, the fact that the advertisement states specifications may be subject to change without notice does not give even the average person, no less the ignorant, unthinking or credulous consumer, notice that the items listed in the "Cruise Pac” are also subject to change without notice.
Hunter contends that the amounts involved here, $1,350 at most, are minimal when compared with the total cost of the Hunter 45. As noted previously, minimal or even no monetary damages are within the contemplation of the statute.
Hunter claims the advertisement cannot be false because it does not state a price and purchasers deal directly with independent dealers. While a purchaser may well negotiate a price for the Hunter 45 with an independent dealer, that does not negate the impression given by the advertisement that the Hunter 45 he will buy is exactly what the Hunter 45 is advertised to be. Such phrases as "There’s nothing else like her in the fleet”; "the new Hunter 45 [has been created] with the most complete sailing package ever offered to the sailing public” and "Listed below [is] * * * the full cruise pac listing, please read * * * carefully as [it is] extensive” and the balance of the advertisement all give the impression that the boat is sold as a completed item, without options or changes, except as to specifications. Therefore, the absence of a stated price and the fact that Hunter dealers are independent are irrelevant. In fact, because dealers are independent it is even more important that Hunter’s advertisement be clear.
Hunter also points to the aforecited paragraph 5 in the contract plaintiff and North Shore entered, which advises that the dealer and manufacturer are not obligated to change the unit purchased to comply with changes the manufacturer may make "at any time”. However, as Hunter states, all its dealers are independent contractors. It does not offer evidence as to *916 what each New York State dealer’s contract with Hunter customers provides. Furthermore, the manner in which this contract was customized to meet plaintiffs demand may negate the effect of paragraph 5 here, and others may also do the same. In any event, the particular contract at issue does not change the fact that the advertisement appears to be misleading.
Hunter also notes that it must plan its advertising in advance, so that in order for the advertisement before this court to appear in the November 1985 issue of "Yachting”, the advertisement had to be submitted to the magazine in September of 1985. At that time, Hunter admits, the final prototype for the Hunter 45 was not even completed. This is a grave admission — the manufacturer setting forth an advertisement with all the detail this advertisement contained about the Hunter 45 when it did not even know what the finished product would be! Hunter’s attempt on this motion to say the advertisement was "a preliminary description of a new product” or "merely a manufacturer’s general descriptive advertisement of one of its products” stretches the imagination beyond credulity. Nowhere does this advertisement even begin to indicate the Hunter 45 is anything less than a fully developed sailing machine ready to go at the instant just as it is. Nowhere except in the statement that specifications are subject to change without notice is the consumer advised that the advertisement deals only with a prototype which was yet to undergo the major revision to which Hunter refers in its papers. The fact that these revisions were financially costly to the manufacturer is not relevant to whether the advertisement was misleading. Based upon all of the aforesaid, I find plaintiff is likely to succeed on the merits of his action based upon section 350 et seq. of the General Business Law.
As to irreparable harm, the statute (General Business Law § 350-d) gives an individual the right to seek injunctive relief and also indicates the Legislature contemplated and intended to encourage small claims. However, it is highly unlikely that any person whose damage is less than $50 could ever prove irreparable injury. Therefore, to apply this criterion to each individual claim would render almost meaningless the right to injunctive relief for small claims which the statute clearly provides. Given the aforecited purpose of the statute, to encourage private enforcement of consumer protection, to strongly deter deceptive business practices, and to supplement the activities of the New York State Attorney- *917 General in prosecuting consumer fraud complaints, I hold that the Legislature intended the irreparable injury at issue to be irreparable injury to the public-at-large, not just to one consumer. In that regard, defendant Hunter states that New York is its largest market, in which it does over $4 million worth of business annually. Therefore, I find a very significant number of consumers could be adversely affected by the false advertisement placed by this defendant. This constitutes sufficient irreparable injury to warrant preliminary relief.
In balancing the equities, I find the statute was designed to protect consumers against the very type of the wrong at hand here. While Hunter argues that if enjoined it will have to abandon its entire national advertising campaign, in fact, the injunction which could be imposed could be limited to such advertising as plaintiff has shown is likely to be found false and misleading. Hunter should be enjoined from that. In fact, the more extensive its false advertising is in New York, the greater the number of affected consumers and, concomitantly, the greater the need for injunctive relief. Therefore, I find the equities balance in plaintiffs favor.
Based upon all of the aforesaid, plaintiffs motion for injunctive relief is granted to the extent that if Hunter intends to or anticipates that it may make changes in equipment and/or accessories in the reasonably foreseeable future, then it is hereby enjoined from any advertising in New York State which fails to state that the equipment and/or accessories on Hunter boats may be subject to change by Hunter without notice. In all other respects the motion is denied.
In reaching this determination, the court has also considered defendant Hunter’s brief argument to the effect that its advertising is protected by the Constitution of the United States and the State of New York. I find the advertising at issue is purely commercial in purpose and the preliminary injunction granted is a reasonable regulation of commercial expression, which is permissible. (Quinn v Aetna Life & Cas. Co., 96 Misc 2d 545 [Sup Ct, Queens County 1978], supra.) Defendant apparently has not mounted any challenge to the constitutionality of the statute. However, if that is its argument, then it is granted leave to renew this motion with respect to this issue only, at which point this court will notify the Attorney-General of the State of New York. (See, CPLR 1012 [b].)
As to the posting of a bond, such a requirement would be *918 impossible for almost every consumer seeking relief under the statute, rendering it a nullity. (For example, defendant Hunter here suggests a $30 million bond would be appropriate.) As consumers here stand in the shoes of the Attorney-General who is not required to post a bond, I find they are also not required to do so, provided they proceed expeditiously. Therefore, all disclosure in this action is to be completed within 45 days of the date of the order signed herewith, on which day plaintiff shall serve and file a note of issue.