Larry SAMMS, Plaintiff,

v.

ABRAMS, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP, Defendant.

15-cv-2741 (JSR)

United States District Court, S.D. New York.

Signed July 28, 2016

See also 112 F.Supp.3d 160.

Ahmad Keshavarz, Ahmad Keshavarz, Law Offices, Brooklyn, NY, for Plaintiff.

Anthony Joseph Genovesi, Jr., Abrams Fensterman, Lake Sucess, NY, for Defendant.

## MEMORANDUM ORDER AND FINAL JUDGMENT

JED S. RAKOFF, UNITED STATES DISTRICT JUDGE.

Plaintiff Larry Samms brought this action against the law firm of Abrams, Fen-

sterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP ("Abrams"), alleging two violations of the Fair Debt Collection Practices Act ("FDCPA") and one violation of N.Y. Gen. Bus. Law ("GBL") § 349. After trial, a jury awarded Samms $5,795 in economic damages and $1,000 in damages for physical injuries and/or emotional distress. See Jury Verdict dated April 21, 2016, ECF No. 88. Samms now seeks injunctive relief, treble damages under GBL § 349, and attorney's fees and costs. For the following reasons, the Court denies Samms's request for injunctive relief, grants his request for treble damages, and grants his request for attorney's fees and costs.

The facts of this case are set out in greater detail in the Court's opinion denying in part and granting in part defendant's motion for judgment on the pleadings. See Memorandum Order dated July 7, 2015, at 1-3, ECF No. 21. By way of background, Abrams filed an action in New York State Supreme Court in Westchester County on behalf of its client the Bishop Charles W. Maclean Episcopal Nursing Home (the "Nursing Home"). The state court complaint alleged that Samms owed the Nursing Home a debt of $21,000 for services rendered. Samms brought the present action alleging that the state court proceeding against him violated the FDCPA and GBL § 349. Samms's first FDCPA claim was a "distant venue" claim under 15 U.S.C. § 1692i(a)(2): Abrams filed the lawsuit against Samms in Westchester County, but Samms resides in Bronx County. Samms's second FDCPA claim was based on the request in the debt collection lawsuit for attorney's fees, which were without legal basis, in violation of 15 U.S.C. §§ 1692e, 1692f(1). Samms's GBL § 349 claim also rested on the baseless request for attorney's fees. The jury found Abrams liable on all three, consolidated claims, but awarded only modest damages.

■ Turning now to Samms' motion for post-verdict relief, Samms first asks this Court to enter a permanent injunction barring Abrams from seeking attorney's fees when not expressly allowed by law or contract. The Supreme Court has explained that

> [a]ccording to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006). Samms's request for injunctive relief arises only from his GBL § 349 claim.

GBL § 349(h) states "[i]n addition to the right of action granted to the attorney general pursuant to this section, any person who has been injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice." Samms argues that this language exempts him from eBay's four-factor test. Specifically, Samms argues that the text of § 349(h) places private plaintiffs like himself in the shoes of the New York attorney general, to the extent that, like the attorney general, they need not show some elements of the eBay test. See City of New York v. Golden Feather Smoke Shop, Inc., 597 F.3d 115, 121 (2d Cir.2010) ("[A]gencies need not prove irreparable injury or the inadequacy of other remedies as required in private

litigation suits." (internal quotation marks omitted)). However, the text of § 349(h) does not say this. Rather than assimilating private suits and suits brought by the attorney general, it allows private suits "in addition" to those brought by the attorney general. See GBL § 349(h). Moreover, cases like Golden Feather reiterate the difference between suits brought by public entities and those brought by private individuals. See id. ("[A]gencies need not prove irreparable injury or the inadequacy of other remedies as required in private litigation suits". (internal quotation marks omitted) (emphasis added)); CFTC v. British Am. Commodity Options, 560 F.2d 135, 141 (2d Cir.1977).

Samms also argues that the eBay test does not apply here because GBL § 349(h) authorizes a private plaintiff to seek injunctive relief, and "[w]here an injunction is authorized by statute it is enough if the statutory conditions are satisfied." Henderson v. Burd, 133 F.2d 515, 517 (2d Cir.1943). However, every Second Circuit case cited by Samms supporting this point involves some public authority seeking an injunction. See City of New York v. Golden Feather Smoke Shop, Inc., 597 F.3d 115 (2d Cir.2010); S.E.C. v. Management Dynamics, Inc., 515 F.2d 801 (2d Cir.1975); Henderson v. Burd, 133 F.2d 515 (2d Cir. 1943) (suit brought by Leon Henderson, Price Administrator, Office of Price Administration). As such, these cases merely reinforce that public entities may be exempted from the eBay test under certain circumstances.

Plaintiff also relies heavily on Barkley v. United Homes, LLC, 848 F.Supp.2d 248, 273–75 (E.D.N.Y.2012), where the Eastern District of New York concluded that private plaintiffs suing under GBL § 349(h) could win permanent injunctions without satisfying the eBay test. Barkley is not binding on this Court, and, with respect, this Court, like another court in this Dis-

trict, must disagree with it. See Koch v. Greenberg, 14 F.Supp.3d 247, 282–83 (S.D.N.Y.2014). To begin with, Barkley inappropriately relies on Second Circuit cases involving public authorities as plaintiffs for the significantly more general proposition that plaintiffs of any kind, including private plaintiffs, can win permanent injunctions when statutory conditions are satisfied. Moreover, even if the Court were to apply Burd's rule that "[w]here an injunction is authorized by statute it is enough if the statutory conditions are satisfied," here there are no statutory conditions to be satisfied: GBL § 349(h) merely authorizes injunctions for private plaintiffs and does not predicate the issuance of injunctions on any specific conditions. Barkley seems to consider the elements of proving a violation of GBL § 349 to be the "statutory conditions" necessary for an injunction to issue. See Barkley, 848 F.Supp.2d 248 at 274. However, as pointed out in Koch, if the statutory conditions were simply the elements of a GBL § 349 claim, the "absurd result" would be that permanent injunctions would be available, as a matter of course, to any plaintiff with a successful GBL § 349 claim. Koch, 14 F.Supp.3d at 283. In sum, there is no basis for exempting private § 349 plaintiffs from the eBay test, and it must be applied here.

■ Samms fails the eBay test. The first three factors weigh against the issuance of a permanent injunction, and the last is neutral. Samms has not demonstrated irreparable injury or that remedies available at law are inadequate to compensate for his injuries. Specifically, although the jury accepted Samms's claims that he suffered economic, physical, and emotional harms as a result of defendant's conduct, these harms were adequately remedied with damages, which the jury awarded.

Samms argues that the irreparable harm element should be evaluated from

the perspective of the public at large, as opposed to Samms individually. But aside from the fact that Abrams maintains that it has now discontinued its demands for legal fees, Samms, on whom the burden rests, has not shown to the contrary. Moreover, here, once again, Samms in effect is claiming that he can act as a kind of private attorney general. As authority for this position, Samms relies on a case arising under a different section of the GBL § 350, which provides a private cause of action to enjoin false advertising. See McDonald v. North Shore Yacht, 134 Misc.2d 910, 513 N.Y.S.2d 590 (N.Y.Sup.Ct.1987). Apart from the fact that the present case concerns GBL § 349, Samms's reasoning that any conduct violating GBL § 349 must irreparably harm the public, simply by virtue of being "consumer-oriented," would exempt private § 349 plaintiffs seeking injunctions from making any showing of irreparable harm, a complete end run around eBay.

■ With respect to the third eBay factor, the balance of hardships between the plaintiff and the defendant does not warrant a remedy in equity. The award of damages will compensate Samms for the hardships he has suffered as a result of the attorney's fees request, and there is no reason to believe he will be injured by Abrams in the future. The effect of an injunction on Abrams would also be minimal, and an injunction of minimal consequence to both parties is not warranted. Finally, although the public interest might not be disserved by a permanent injunction, the satisfaction of the fourth eBay element cannot overcome Samms's failure to satisfy the first three elements. Accordingly, the Court denies Samms's request for injunctive relief.

■ Samms next asks the Court for an additional $1,000 in statutory damages under GBL § 349. GBL § 349(h) states that "[t]he court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section." Samms contends that Abrams's filing of lawsuits with request for attorney's fees without legal basis must have been willful or knowing. It is difficult to escape this conclusion: Abrams is, after all, a law firm and has demonstrated its competence throughout the present case (in which it represented itself). The Court cannot accept that the drafting of a legal document, in particular specific requests for relief in pleadings, by capable, experienced attorneys could be accidental or reckless. Instead, the Court finds that Abrams willfully and knowingly made a request for attorney's fees without legal basis and that trebled damages, capped at $1,000, should follow.

Abrams objects on two grounds. First, Abrams argues that GBL § 349(h) should be read such that trebled damages are not authorized when actual damages are equal to or exceed $1,000. Samms responds that this reading does not align with the statute's purpose of encouraging private plaintiffs to bring suit to deter deceptive business practices. Courts in this district have disagreed on this point, although without much discussion. Compare, e.g., City of New York v. Coastal Oil New York, Inc., No. 96–cv–8667, 1999 WL 493355 at *15 (S.D.N.Y. July 12, 1999) (concluding, at the summary judgment stage, that "additional damages may not increase the award to plaintiffs on this [GBL § 349] claim to an amount over one thousand dollars") with Koch v. Greenberg, 14 F.Supp.3d 247, 278–79 (S.D.N.Y.2014) (discussing trebled damages under GBL § 349 in context of affirming jury verdict awarding $1,000 in trebled damages for each violation of GBL § 349, on top of compensatory damages exceeding $1,000 at issue). The only case offered by the parties that discusses this issue in much depth is authored by the late

Harold Baer, Jr., then a Justice of New York State Supreme Court and later a respected and beloved Judge of this Court. See Sulner v. Gen. Accident Fire & Life Assurance Corp., 122 Misc.2d 597, 471 N.Y.S.2d 794, 797 (N.Y.Sup.Ct.1984). Then-Justice Baer concluded that the New York legislature intended to set a cap on trebled damages of up to $1,000, not to disallow treble damages on awards of greater than or equal to $1,000. In particular, he reasoned that the legislature may have been concerned about uncapped trebling of uncapped damages awards. The Court finds this reasoning persuasive. Although § 349(h) is not a "model of clarity," id. the legislature clearly intended treble damages to play some, albeit limited, role in the statutory scheme. Defendant's reading would write the treble damages provision out of the statute altogether in the case of any substantial award of damages. Accordingly, the Court concludes that it may award treble damages of up to $1,000, based on its finding of Abrams's willfulness and knowledge.

Second, Abrams objects that because the jury returned a single damages award for plaintiff's FDCPA claims and the § 349 claim, the Court may not award treble damages. The Court denied Abrams's request for a special verdict because the FDCPA claims and the § 349 claim were so factually intertwined that it would have been needlessly confusing, if possible at all, for a jury to untangle them. Abrams's objection to the treble damages award fails for the same reason. There is a unitary damages award in this case of $6,795, a more than adequate basis for a trebled award topping out at $1,000. Accordingly, the Court grants Samms's request for an additional $1,000 in damages.

Finally, the Court grants Samms's request for attorney's fees. Under 15 U.S.C. § 1692k(a)(3), a defendant is liable to a successful FDCPA plaintiff for "the costs of the action, together with a reasonable attorney's fee as determined by the court." The parties agree that the "lodestar" method, "i.e., the number of hours worked multiplied by the prevailing hourly rates," is the appropriate way to calculate the fees. Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 546, 130 S.Ct. 1662, 176 L.Ed.2d 494 (2010). After multiplying the number of hours by the reasonable rate, the court may take into account other considerations "to adjust the fee upward or downward, including the important factor of the 'results obtained.'" Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Abrams argues that both the proposed hours and hourly rate for plaintiff's counsel are unreasonable.

As to Abrams's argument that Samms's counsel's hourly rate of $400 is unreasonable, under the "forum rule," courts look to "the hourly rates employed in the district in which the reviewing court sits" when determining a reasonable rate. Simmons v. New York City Transit Auth., 575 F.3d 170, 174 (2d Cir.2009) (internal quotation marks omitted). In addition, a court should "bear in mind all of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections, 522 F.3d 182, 190 (2d Cir.2007). In particular, "the district court should consider, among others, the Johnson [v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir.1974) ] factors."[1] Id.

---

1. The Second Circuit has identified the twelve Johnson factors as

 (1) the time and labor required; (2) the novelty and difficulty of the questions; (3)

the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's custom-

■ Upon consideration of the <u>Johnson</u> factors and other case-specific variables, the Court concludes that $400 is a reasonable hourly rate for plaintiff's counsel. $400 per hour, and even $550 per hour, has been accepted as a reasonable rate for FDCPA work in this district. <u>See</u> <u>De La Paz v. Rubin & Rothman, LLC</u>, No. 11 Civ. 9625, 2013 WL 6184425 at *6 (S.D.N.Y. Nov. 25, 2013) (accepting rates of $550 and $400, although pointing out that they are "at the high end of rates awarded for FDCPA work"). Plaintiff's counsel has significant experience litigating FDCPA cases. <u>See</u> Declaration of Ahmad Keshavarz ¶¶ 11, 17, ECF No. 97. In addition, plaintiff's counsel has carried his "burden ... to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation" by submitting four affidavits from practitioners attesting to the reasonableness of his $400 rate. <u>Blum v. Stenson</u>, 465 U.S. 886, 895 n.11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); <u>see</u> Declaration of Ahmad Keshavarz Ex. G-J, ECF No. 97.

■ Abrams raises two primary objections to Samms's counsel's rate. First, Abrams argues that the retainer agreement between Samms and his counsel contained two dubious provisions that discouraged settlement and encouraged Samms and his counsel to prolong litigation. <u>See</u> Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Attorney's Fees at 23, ECF No. 105. Specifically, the retainer agreement states that "no settlement shall be entered into without the agreement of both the client and the attorneys." <u>See</u> Retainer Agreement between Larry Samms and Ahmad Keshavarz ¶ 6. In addition, the retainer agreement appears to contemplate plaintiff and plaintiff's counsel splitting some portion of attorney's fees between them. <u>See</u> <u>id.</u> ¶ 3.

The Court disapproves of both of these provisions. With respect to the settlement provision, "the decision to settle is the client's to make, not the attorney's." <u>Fennell v. TLB Kent Co.</u>, 865 F.2d 498, 501 (2d Cir.1989); <u>see also</u> ABA Model Rules of Prof'l Conduct r. 1.2 ("A lawyer shall abide by a client's decision whether to settle a matter."). Requiring an attorney's approval before a client may settle creates a conflict of interest between the attorney's mercenary interest and his duty to act in the best interest of his client. Here, the provision could have theoretically prolonged the litigation by allowing plaintiff's counsel to veto a settlement.

The Court also disapproves of any provision splitting attorney's fees between counsel and plaintiff. The Supreme Court has explained, in the context of 42 U.S.C. § 1988, that the purpose of attorney fee awards is to "further[ ] the successful prosecution of meritorious claims," <u>Kay v. Ehrler</u>, 499 U.S. 432, 438, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991). This is why, for instance, a <u>pro se</u> plaintiff—even if she is an attorney—cannot win attorney's fees under § 1988, although she may be a prevailing party. Id. Plaintiffs splitting attorney's fees with their counsel does not support this policy of encouraging meritorious claims. Instead, it gives plaintiffs an incentive to perpetuate actions as long as possible to increase their windfall.

---

ary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

<u>Id.</u> at 186 n.3.

Samms's counsel concedes that both provisions were inappropriately drafted, and has amended his retainer agreement to correct them. See Declaration of Ahmad Keshavarz ¶ 15, ECF No. 111. More importantly, Samms personally avers that he was not focused on either of these provisions in the retainer agreement and that neither provision affected his decision-making during the litigation. Although Samms received his counsel's opinion on each settlement offer, Samms was aware that each decision to settle or not was his alone to make, the retainer agreement language notwithstanding. See Declaration of Larry Samms ¶¶ 3-10, ECF No. 110. Samms also represents that he not did think that he would receive any portion of any attorney's fees awarded. See id. ¶¶ 11-12. Therefore, since the improper provisions had no actual effect on the behavior of Samms or his counsel during the litigation, the Court declines to hold the rates unreasonable based solely on the defects in the retainer agreement.[2]

■ Abrams also contends that Samms's counsel's more general misconduct in allegedly prolonging this litigation warrants a rate reduction. Specifically, Abrams alleges that Samms's counsel failed to communicate settlement demands and calculable damages in a timely fashion, frustrating efforts to settle the litigation. See Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Attorney's Fees at 25-30, ECF No. 105. In support, Abrams cites several alleged instances of Samms's counsel's misconduct in previous litigation. See, e.g., id. at 25, 27–28. These have no bearing on the case here. Abrams has not made a satisfactory

showing that Samms's counsel acted in bad faith. Notably, plaintiff also complains about defendant's delay in responding to settlement offers. See Plaintiff's Memorandum of Law in Support of Attorney's Fees and Costs, and for Entry of Judgment at 12, ECF No. 96. Moreover, a motion for attorney's fees is not the right place to litigate attorney misconduct. See Cabala v. Crowley, 736 F.3d 226, 231 (2d Cir.2013) ("The proper forum for resolving the parties' dispute regarding [counsel's alleged misconduct concerning settlement] . . . is an attorney disciplinary proceeding or a proceeding pursuant to 28 U.S.C. § 1927, not a fee litigation."). Thus, neither of defendant's objections to plaintiff's counsel's rates is compelling, and the Court concludes that $400 per hour is a reasonable rate.

■ Abrams also raises four principal objections to the hours submitted by Samms's counsel. First, Abrams argues that Samms's counsel should not recover fees for time related to the GBL § 349 claim. Specifically, Abrams contends that it is impossible to determine whether the § 349 claim was "successful" from the jury's unitary damages award. As discussed above, the claims were consolidated for purposes of determining the damages award in this case, but the amount of the verdict, when consolidated with the specific evidence offered on each claim, strongly suggests that the jury found liability on all these claims. But even if that were not the case, plaintiffs may be awarded fees for unsuccessful claims that are sufficiently related to successful ones. As the Supreme Court has explained:

---

**2.** The Court denies, however, plaintiff's counsel's request to continue to seal the original retainer agreement. Judicial documents (which the retainer agreement became as part of the Court's consideration of plaintiff's motion) enjoy a presumption of public access, see United States v. Amodeo, 71 F.3d 1044,

1048 (2d Cir.1995), and plaintiff's counsel has not shown any good reason for overcoming that presumption. Accordingly, the Court hereby orders that the retainer agreement and related sections in the declarations, exhibits, and letters be unsealed.

In [some] cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims.

Hensley v. Eckerhart, 461 U.S. 424, 435, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); see also Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir.1997). Samms's GBL claim arose from the same core of facts and implicated similar legal issues as his federal claims. Samms's counsel would have done much of the same legwork to litigate any of the claims, so it is neither necessary nor practicable to separate out the hours dedicated to each claim.

 Abrams also contends that Samms's counsel's time records appear not to have been contemporaneously created. Absent unusual circumstances, attorneys are required to submit contemporaneous records with their fee applications. See New York State Ass'n for Retarded Children v. Carey, 711 F.2d 1136, 1147 (2d Cir.1983). Abrams's suspicion stems from a discrepancy between Samms's counsel's current request for $197,640 (before "billing judgment") and his earlier representation to Abrams in a settlement demand that his fees at that time had already reached $220,000. See Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Attorney's Fees at 17-18, ECF No. 105. Samms's counsel attributes the discrepancy to leaving his time-keeper on for the length of the trial and including an estimate of his associates' time, which he later chose to leave off the fee petition. See Declaration of Ahmad Keshavarz ¶¶ 11-12, ECF No. 111. Samms's counsel's explanation is reasonable, and Abrams's other reasons for believing Samms's record to be created after-the-fact, such as the number of round numbers in Samms's time entries,

are not compelling. As such, the Court accepts Samms's counsel's time records as valid.

 Next, Abrams contends that Samms's counsel's time entries are too vague. Specifically, Abrams takes issue with broad descriptions such as "worked on complaint" or "worked on fee petition," claiming that they "do[ ] not provide this Court with enough probative information to ascertain if the alleged work and time spent was actually reasonable." See Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Attorney's Fees at 7, ECF No. 105. However, Samms's counsel's time entries are not so vague as to prevent the Court from assessing whether the work and time spent were reasonable. In particular, stating that a certain amount of time was spent working on a particular pleading or motion is sufficient for the Court to evaluate the merit of the entry. See, e.g., Declaration of Ahmad Keshavarz Ex. A at 3, ECF No. 97 (detailing activities such as "worked on opposition to their motion to dismiss" and "drafted reply to strike evidence of deposition testimony").

Abrams also objects that plaintiff's counsel's records do not specify which tasks were performed by associates or clerical staff, as opposed to lead counsel. Abrams contends that several of counsel's time entries include clerical tasks, such as filing motions, which do not warrant counsel's $400 per hour rate. In response, Samms's counsel explains that he exercised billing judgment in omitting associates' time from the fee petition altogether, given the low hourly rate he would charge for their work. See Declaration of Ahmad Keshavarz ¶¶ 11-12, ECF No. 111 (explaining that Mr. Pereira was one year out of the law school and Ms. Parnes was still awaiting admission to the bar). He also explains that his associates performed all the administrative work, but invites the Court to

deduct 0.1 hours for time he spent filing motions on ECF. See id. ¶ 13. The Court accepts plaintiff's counsel's explanation and deducts the 0.1 hours. Apart from this reduction, the Court does not consider the tasks challenged by defendant, such a filing motions, to be inappropriate for an attorney to perform, particularly in a situation of a very small firm that lacks the support services of a large firm.

Finally, Abrams contends that Samms's counsel's hours are excessive. Specifically, Abrams takes issue with counsel's request for 16.1 hours for intake and drafting a complaint, 26.7 hours for multiple amendments of the complaint, 37.7 hours of discovery, and 41.9 hours of preparing the fee application. See Plaintiff's Memorandum of Law in Support of Attorney's Fees and Costs, and for Entry of Judgment at 9, ECF No. 96. In determining whether hours are excessive, the critical inquiry is "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Grant v. Martinez, 973 F.2d 96, 99 (2d Cir.1992). After careful review, the Court finds some but not all of the aforementioned requests to be excessive. Although 16.1 hours for intake and drafting the complaint is near the high end for an attorney with counsel's experience, the Court finds that the time spent here was reasonable given the novel legal questions raised, several which were of first impression in this circuit. The Court also finds the time spent on amending the complaint to be reasonable; as plaintiff's counsel points out, the amendment process was driven largely by Abrams' filing multiple unsuccessful dispositive motions. Defendant "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by plaintiff in response." Copeland v. Marshall, 641 F.2d 880, 904 (D.C.Cir.1980) (en banc).

The Court, however, finds that the 37.7 hours spent on discovery were excessive. "Given that FDCPA is a strict liability statute, the discovery necessary to the federal claim [is] essentially satisfied by establishing the chronology of events and authenticating the supporting documents." In re Arbitration Between Okyere & Houslanger & Assocs., No. 12–cv–01463 (JPO) (GWG), 2015 WL 4366865, at *21 (S.D.N.Y. May 28, 2015). As Abrams points out, this case did not involve any dispute over the underlying facts: the parties agreed from the outset that the state court action included a request for attorney's fees and that the case was initially filed in Westchester County. See Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Attorney's Fees at 1, ECF No. 105. The lack of factual dispute and counsel's extensive experience litigating FDCPA claims suggest that the 37.7 hours spent on discovery was excessive. See, e.g., Okyere, 2015 WL 4366865 at *21–*22 (reducing discovery hours by 50 %). Accordingly, the Court reduces the time granted for discovery to 20 hours.

The Court also concludes that the 41.9 hours spent on the fee application was excessive. Although "attorneys' fees for the preparation of the fee application are compensable," Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1183 (2d Cir.1996), "a request for attorney's fees should not result in a second major litigation," Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Much of the dispute over the fee application was driven by the improperly drafted retainer agreement, which Samms's counsel has conceded was his wrongdoing. Counsel has also had extensive experience filing similar applications but does not provide an adequate explanation of why so much time was needed in this particular case. His unspecific time entries do not help his

cause. See Declaration of Ahmad Kesha-varz Ex. A at 6, ECF No. 97 (listing "[w]orked on fee petition" for seven time entries). Because of the vague time entries and the excessive number of hours, the Court reduces the time awarded for the fee application to 25 hours, including time spent on counsel's reply.

■ The total lodestar amount after these adjustments is $172,640 (431.6 hours at $400 per hour). The Court concludes, however, that this lodestar amount should be reduced in light of the limited success ultimately obtained by the plaintiff. See Hensley, 461 U.S. at 436–37, 103 S.Ct. 1933 (1983) ("If ... a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.... [The district court] may simply reduce the award to account for the limited success."). One of Samms's original claims against Abrams was dismissed, and Samms did not win injunctive relief. With respect to damages, Samms rejected defendant's offer of judgment of $7,001, suggesting he was seeking more than what was ultimately awarded. See Declaration of Anthony Genovesi, Esq. in Opposition to Plaintiff's Motion for Attorney's Fees Ex. I, ECF No. 104. Accordingly, Samms's case was not a complete success, and the attorney's fees award should be reduced by 15% from the lodestar amount. See, e.g., Green v. Torres, 361 F.3d 96, 100 (2d Cir.2004) (affirming 20% reduction to "accurately reflect the partial success obtained by the plaintiff"); Konits v. Karahalis, 409 Fed. Appx. 418, 420–22 (2d Cir.2011) (Summ. Order) (affirming 25% reduction for limited success). Applying this 15% reduction, the Court calculates a final award of $146,744 in attorney's fees.

The Court also grants Samms's motion for $2,803.09 in expenses, which was unopposed by Abrams. "[A]ttorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." Le-Blanc–Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir.1998) (alteration in original) (internal quotation marks omitted). The majority of the costs requested by plaintiff are associated with transporting Samms from his nursing home to the courthouse, which can properly be recovered. See, e.g., Larsen v. JBC Legal Grp., 588 F.Supp.2d 360, 365 (E.D.N.Y.2008) (reimbursing travel costs).

Based on the foregoing, the Court hereby enters final judgment holding defendant Abrams liable to plaintiff Samms in the total amount of $158,342.09, consisting of $145,180 in attorney's fees, $5,795 in economic damages, $1,000 in damages for physical injuries and/or mental or emotional distress, $1,000 in additional damages under 15 U.S.C. § 1692k(a)(2)(A), $1,000 in treble damages under GBL § 349, and $2,803.09 in costs.

The Clerk of Court is directed to close the case.

SO ORDERED.